UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASSCARE, a New York nonprofit corporation;
NATIONAL INSTITUTE OF FAMILY AND LIFE
ADVOCATES d/b/a NIFLA, a Virginia corporation;
FIRST BIBLE BAPTIST CHURCH, a New York nonprofit
corporation,

                                    19-CV-1409

                     *Plaintiffs,*          TJM/DJS

            -against-

ANDREW M. CUOMO, in his official capacity as the
Governor of the State of New York; ROBERTA
REARDON, in her official capacity as the Commissioner of
the Labor Department of the State of New York; and
LETITIA JAMES, in her official capacity as the Attorney
General of the State of New York,

                                    *Defendants.*

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS

                    LETITIA JAMES
                    Attorney General of the State of New York
                    Attorney for Defendants Andrew M. Cuomo,
                         Letitia James and Roberta Reardon
                    The Capitol
                    Albany, New York 12224

Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone: (518) 776-2608
Fax: (518) 915-7738 (Not for service of papers)          Date: January 20, 2020

## Table of Contents

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

LABOR LAW §203-E ................................................................................................................. 1

FACTS AS ALLEGED IN THE COMPLAINT ........................................................................... 3

ARGUMENT ................................................................................................................................. 4

    POINT I ...................................................................................................................................... 7

       THE COMPLAINT SHOULD BE DISMISSED ....................................................... 7

          A. THE COMPLAINT FAILS TO STATE A FREE EXERCISE
             CLAIM ...................................................................................................... 8

          B. THE COMPLAINT FAILS TO STATE A RELIGIOUS
             AUTONOMY CLAIM ............................................................................ 14

          C. THE COMPLAINT FAILS TO STATE A FREE SPEECH
             CLAIM ...................................................................................................... 17

          D. THE COMPLAINT FAILS TO STATE A FREEDOM OF
             EXPRESSIVE ASSOCIATION CLAIM ................................................. 23

          E. THE STATUTE IS NOT UNCONSTITUTIONALLY VAGUE ....... 28

    POINT II ................................................................................................................................... 31

       PLAINTIFFS HAVE FAILED TO ESTABLISH ENTITLEMENT TO A
       PRELIMINARY INJUNCTION ............................................................................ 31

          A. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF
             ESTABLISHING IRREPARABLE HARM ............................................ 32

          B. THE EQUITIES WEIGH IN FAVOR OF THE DEFENDANTS ...... 35

CONCLUSION ............................................................................................................................ 36

**Table of Authorities**

CASES                                                                         Page(s)

*Able v. United States,*
    44 F.3d 128 (2d Cir. 1995)..............................................................................................32

*Allied Office Supplies, Inc. v. Lewandowski,*
    261 F.Supp.2d 107 (D. Conn. 2005)...............................................................................31

*Aparcio v. Christian Union,*
    2019 U.S. Dist. LEXIS 55938 (S.D.N.Y. 2019)............................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................................................7

*Bell Atl. Corp. v. Twombly,*
    50 U.S. 544 (2007)...........................................................................................................7

*Biel v. St. James Sch.,*
    911 F.3d 603 (9th Cir. 2018).........................................................................................16

*Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg,*
    111 F.Supp.3d 459 (S.D.N.Y. 2015)...............................................................................8

*Board of Trustees of State of New York v. Fox,*
    492 U.S. 469 (1989).........................................................................................................6

*Boelter v. Hearst Communs.,*
    192 F.Supp.3d 427 (S.D.N.Y. 2016)...............................................................................5

*Bollard v. California Province of the Soc'y of Jesus,*
    196 F.3d 940 (9th Cir. 1999).........................................................................................16

*Boy Scouts of America v. Dale,*
    530 U.S. (2000)..................................................................................................23, 25, 26

*Brownell v. City of Rochester,*
    190 F.Supp. 472 (W.D.N.Y. 2001)................................................................................33

*Burwell v. Hobby Lobby Stores, Inc.,*
    573 U.S. 682 (2014).................................................................................................11, 12

*Carey v. Population Servs. Int'l.,*
    431 U.S. 678 (1977).........................................................................................................4

*Catholic Charities of Diocese of Albany v. Serio,*
    28 A.D.3d 115 (3d Dep't 2006).....................................................................................20

*CBF Industria DeGusa S/A v. AMCI Holdings, Inc.,*
   2018 U.S. Dist LEXIS 100781 (S.D.N.Y. June 15, 2018)..........................7

*Chrysler Corp. v. Brown,*
   441 U.S. 281 (1979).................................................................12

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
   508 U.S. 520 (1993).............................................................8, 9

*Citizens Union of City of New York v. Attorney Gen. of New York,*
   269 F. Supp. 3d 124 (S.D.N.Y. 2017)..........................................12

*City of Boerne v. Flores,*
   521 U.S. 507 (1997).................................................................12

*Concord Assocs., L.P. v. Entm't Props. Trust,*
   817 F.3d 46 (2d Cir. 2016)..........................................................7

*Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona,*
   138 F.Supp.3d 352 (S.D.N.Y. 2015)............................................21

*Congregation of Rabbinical College of Tartikov, Inc. v. Vill. Of Pomona,*
   915 F.Supp.2d 574 (S.D.N.Y. 2013)..............................................8

*CTIA – The Wireless Ass'n v. City of Berkeley,*
   928 F.3d 832 (9th Cir. 2019) ......................................................34

*Dallas v. Stanglin,*
   490 U.S. 19 (1989)...................................................................24

*DiFolco v. MSNBC LLC,*
   622 F.3d 103 (2d Cir. 2010)..........................................................7

*Doe v. City of New York,*
   15 F.3d 264 (2d Cir. 1994)...........................................................5

*Doe v. Putnam Cty.,*
   344 F.Supp.3d 518 (S.D.N.Y. 2018).............................................4, 5

*Doe v. Marsh,*
   918 F.Supp. 580 (N.D.N.Y. 1996).................................................5

*Eastwood v. Dep't of Corrections,*
   846 F.2d 627 (10th Cir. 1988) ......................................................4

*Employment Div., Dept. of Human Resources of Ore. v. Smith,*
   494 U.S. 872 (1990)...................................................................8

*Evergreen Ass'n v. City of New York,*
    740 F.3d 233 (2d Cir. 2014)............................................................................28

*Fighting Finest v. Bratton,*
    95 F.3d 224 (2d Cir. 1996).............................................................................25

*Fortress Bible Church v. Feiner,*
    694 F.3d 208 (2d Cir 2012).............................................................................9

*Fratello v. Archdiocese of N.Y.,*
    863 F.3d 190 (2d Cir. 2017)...........................................................................16

*Hancock v. Cty. of Rensselaer,*
    882 F.3d 58 (2d Cir. 2018)...............................................................................5

*Hancock v. Essential Resources, Inc.,*
    792 F.Supp. 924 (S.D.N.Y. 1992) ..................................................................32

*Hill v. Colorado,*
    530 U.S. 703 (2000)........................................................................................28

*Hirschfield v. Stone,*
    193 F.R.D. 175 (S.D.N.Y. 2000) .....................................................................4

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
    565 U.S. 171 (2012)..................................................................................14, 27

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth
    Dep'ts,*
    852 F.3d 178 (2d Cir. 2017).......................................................................24, 26

*JSG Trading Corp. v. Tray-Wrap, Inc.,*
    917 F.2d 75 (2d Cir. 1990)..................................................................33, 34, 35

*Kamerling v. Massanari,*
    295 F.3d 206 (2d Cir. 2002)...........................................................................33

*Knight-Ridder Broad., Inc. v. Greenberg,*
    70 N.Y.2d 151 (1987) ...............................................................................12, 13

*Kraham v. Lippman,*
    478 F.3d 502 (2d Cir. 2007)...........................................................................26

*Lawrence v. Texas,*
    539 U.S. 558 (2003).....................................................................................1, 4

*Leebart v. Harrington,*
    332 F.3d 134 (2d Cir. 2003).............................................................................8

*Lyng v. Intl. Union,*
  485 U.S. 360 (1988)................................................................................................25

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
  138 S.Ct. 1719 (2018)...............................................................................................9

*Matson v. Bd. of Educ.,*
  631 F.3d 326 (2d Cir. 2011)......................................................................................7

*Matter of Saratoga Cty. Economic Opportunity Council, Inc. v. Village of
  Ballston Spa Zoning Bd. of Appeals,*
  112 A.D.3d 1035 (3d Dept 2013) ...........................................................................29

*Moore v. Consol. Edison Co.i,*
  409 F.3d 508 (2d Cir. 2001)....................................................................................31

*Morel v. Giuliani,*
  927 F.Supp. 622 (S.D.N.Y. 1995) ..........................................................................30

*Murphy v. Empire of America, FSA,*
  746 F.2d 931 (2d Cir. 1984)....................................................................................12

*National Elec. Mfrs. Ass'n. v. Sorrell,*
  272 F.3d 104 (2d Cir. 2001)..............................................................................21, 22

*New Hope Family Servs. v. Poole,*
  387 F.Supp.3d 194 (N.D.N.Y. 2019)..................................................................27, 31

*New York Progress & Protections PAC v. Walsh,*
  733 F.3d 483 (2d Cir. 2013)....................................................................................32

*New York State Club Ass'n, Inc. v. City of N.Y.,*
  487 U.S. 1 (1988)......................................................................................................6

*New York State Rest. Ass'n v. N.Y. City Bd. of Health,*
  556 F.3d 114 (2d Cir. 2009)....................................................................................22

*Otoe-Missouria Tribe of Indians v. New York State Dept. of Fin. Servs.,*
  769 F.3d 105 (2d Cir. 2014)....................................................................................31

*Our Lady's Inn v. City of St. Louis,*
  349 F.Supp.3d 805 (E.D. MI 2018) ...........................................................18, 19, 27

*Paul v. Davis,*
  424 U.S. 693 (1975)..................................................................................................4

*People v. Cruz,*
  48 N.Y.2d 419 (1979)..............................................................................................29

*Puri v. Khalsa,*
  844 F.3d 1152 (9th Cir. 2017) ......................................................................................16

*Rankel v. Town of Somers,*
  999 F.Supp.2d 527 (S.D.N.Y. 2014) ...............................................................................6

*Redhead v. Conf. of Seventh-Day Adventists,*
  440 F.Supp.2d 211 (E.D.N.Y. 2006) .........................................................................14, 15

*Restaurant Law Ctr. v. City of New York,*
  360 F.Supp.3d 192 (S.D.N.Y. 2019) ..........................................................................6, 21

*Roberts v. United States Jaycees,*
  468 U.S. 609 (1984) ...........................................................................................23, 24, 27

*Roe v. Wade,*
  410 U.S. 113 (1973) ...................................................................................................4

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,*
  547 U.S. 47 (2006) ...........................................................................................17, 18, 21

*Rupp v. City of Buffalo,*
  2019 U.S. Dist. LEXIS 133868 (W.D.N.Y. Aug. 7, 2019) .........................................29

*Rweylemamu v. Cote,*
  520 F.3d 198 (2d Cir. 2008) ........................................................................................15, 17

*South Carolina Edu. Ass'n v. Campbell,*
  883 F.2d 1251 (4th Cir. 1989) .......................................................................................12

*Smith v. United States,*
  508 U.S. 223 (1993) ...................................................................................................29

*State of New York v. Nuclear Regulatory Com.,*
  550 F.2d 745 (2d Cir. 1977) ........................................................................................32, 33

*Statharos v. New York City Taxi & Limousine Comm'n,*
  198 F.2d 317 (2d Cir. 1999) ..........................................................................................5

*Stormans, Inc. v. Wiesman,*
  794 F.3d 1064 (9th Cir. 2015) ......................................................................................10

*Tabbaa v. Chertoff,*
  509 F.3d 89 (2d Cir. 2007) ...........................................................................................25

*Texas v. Johnson,*
  491 U.S. 397 (1989) ...................................................................................................24

*Thorne v. City of El Segundo,*
    726 F.2d 459 (9th Cir. 1983) ........................................................................4

*United Reporting Publ'g Corp. v. California Highway Patrol,*
    146 F.3d 1133 (9th Cir. 1998) ......................................................................5

*United States v. Morrison,*
    686 F.3d 94 (2d Cir. 2012)..........................................................................30

*United States v. O'Brien,*
    391 U.S. 367 (1968).....................................................................................12

*United States v. Thompson,*
    896 F.3d 155 (2d Cir. 2018)........................................................................24

*Vermont Right to Life Comm., Inc. v. Sorrell,*
    758 F.3d 118 128 (2d Cir. 2014 )..........................................................28, 30

*Washington v. African Methodist Episcopal Church, Inc.,*
    2011 U.S. Dist. LEXIS (W.D.N.Y. Dept. 16, 2011)...............................15, 16

*West Virginia State Bd. of Ed. v. Barnette,*
    319 U.S. 624 (1943)....................................................................................18

*Whalen v. Roe,*
    429 U.S. 589 (1977).......................................................................................5

*Wooley v. Maynard,*
    430 U.S. 705 (1977)....................................................................................17

*WTC Families for a Proper Burial, Inc. v. City of New York,*
    567 F.Supp.2d 529 (S.D.N.Y. 2008)..............................................................8

## U.S. CONSTITUTIONAL PROVISIONS

First Amendment .......................................................................................... passim

Fourteenth Amendment ...............................................................................1, 4

## FEDERAL STATUTES

42 U.S.C. § 2000bb-2 ......................................................................................12

42 U.S.C. § 2000e et seq...............................................................................10, 15

42 U.S.C. § 1983 ................................................................................................................ 1

42 U.S.C. § 12101 et seq. ................................................................................................ 10

Affordable Care Act ............................................................................................ 10, 11, 13

Religious Freedom Restoration Act ................................................................................ 12

HIPAA ............................................................................................................................. 13


**STATE STATUTES**

McKinney's Cons. Law of N.Y., Book 1, Statutes, §150 ............................................... 15

N.Y. Labor Law

    § 2 .......................................................................................................................... 29

    § 21 ........................................................................................................................ 30

    § 195 ...................................................................................................................... 22

    § 201-g .............................................................................................................. 10, 22

    § 203-d ................................................................................................................... 29

    § 203-e ............................................................................................................ passim

    § 206-a ................................................................................................................... 22

    § 213 ...................................................................................................................... 30

    § 876 ...................................................................................................................... 22

N.Y. Executive Law

    § 290, et seq ........................................................................................................... 10

**STATE REGULATIONS**

9 N.Y.C.R.R. § 466.1 ....................................................................................................... 22

**RULES**

FRCP 12(b)(6) .............................................................................................................. 1, 7

**OTHER**

https://labor.ny.gov/workerprotection/laborstandards/employer/posters.shtm..............................22

## PRELIMINARY STATEMENT

The fundamental individual rights to privacy, personal decisions regarding intimate family matters, and private medical information have long been held sacrosanct in this country. These deeply held rights specifically protect "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education" Lawrence v. Texas, 539 U.S. 558, 573-574 (2003).

In November 2019, New York State enacted legislation to ensure that employees, and their dependents, not be discriminated against for exercising these long-recognized rights. N.Y. Labor Law §203-e. In this action pursuant to 42 U.S.C. §1983, the plaintiffs, CompassCare, National Institute of Family and Life Advocates ("NIFLA") and First Bible Baptist Church ("First Bible"), challenge this statute. Dkt. No. 1. The plaintiffs allege that Labor Law §203-e (hereafter "the statute" or "§203-e") violates their First Amendment rights to (1) the free exercise of religion, (2) religious autonomy, (3) free speech and (4) expressive association and is unconstitutionally vague under the Fourteenth Amendment.

This memorandum of law is submitted on behalf of defendants Governor Andrew M. Cuomo, New York State Department of Labor ("DOL") Commissioner Roberta Reardon and Attorney General Letitia James in support of the defendants' cross-motion to dismiss the complaint in its entirety, with prejudice, pursuant to FRCP 12(b)(6), and in opposition to plaintiffs' motion for a preliminary injunction.

## LABOR LAW §203-E

Labor Law 203-e was enacted to "prohibit employers from discriminating against employees based on the employees' or dependents' reproductive health decisions, and to provide remedies for such violations." Dkt. Nos. 1-4 at p. 5 & 1-5 at p. 6. Additionally, the statute furthers several other legitimate, important and compelling state interests. Specifically, it furthers the

1

State's longstanding interest in protecting individuals' rights to make private health care and family planning decisions, including whether to use contraception or end a pregnancy. Additionally, it furthers the State's interest in protecting individuals' privacy in their medical records and health information. Finally, it furthers the State's interest in ensuring that employees are aware of their rights in the workplace.

Toward these ends, the statute prohibits all employers from: (1) "accessing an employee's personal information regarding the employee's or the employee's dependent's reproductive health decision making, including but not limited to, the decision to use or access a particular drug, device or medical service without the employee's prior informed affirmative written consent;" or (2) discriminating, or taking "any retaliatory personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service." N.Y. Labor Law §203-e(1) & (2)(a). Additionally, an employer may not "require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions, including use of a particular drug, device, or medical service." Id. at §203-e(2)(b). Further, if an employer "provides an employee handbook to its employees," it must "include in its handbook notice of" these rights. Id. at §203-e(3).

The statute provides an employee a private right of civil action. Id. at §203-e(4).

2

## FACTS AS ALLEGED IN THE COMPLAINT

The complaint alleges that plaintiff CompassCare is a non-profit "pregnancy care center" that provides pregnancy-related clinical testing for women, Dkt. No. 1 at ¶¶55, 56, 58, and provides information and "counseling" to women considering abortion.[1] Id. at ¶¶59-63. CompassCare "does not recommend, provide, or refer for abortions or abortifacient drugs or devices," id. at ¶69, or "provide or refer patients for birth control in any form," id. at ¶73, because abortion and birth control use are contrary to its religious beliefs. Id. at ¶¶65-80. Accordingly, CompassCare, through its employee handbook, requires its employees to agree not to, *inter alia*, have an abortion or use contraception. Id. at ¶¶81-93.

NIFLA in a "non-profit membership organization," which is "incorporated as a religious organization" in Virginia, id. at ¶¶42, 97-98, and "provides both medical and non-medical pro-life pregnancy centers with legal resources and counsel," id. at ¶99. It has forty-one member centers in New York, id. at ¶102, to which it offers a "an employee handbook template." Id. at ¶105.

First Bible is a church whose religious beliefs preclude abortion, and permit sexual activity only between a man and woman within marriage.[2] Id. at ¶¶118-123. First Bible works with, and supports, CompassCare and other pro-life organizations. Id. at ¶¶124-128. It also operates a pre-K though twelfth grade school (Northstar Christian Academy) and a sports and recreation program (Grace and Truth Athletics and Sports Park). Id. at ¶¶133, 137. First Bible

---

[1] CompassCare also "provides training and tools to other pregnancy care centers," Dkt. No. 1 at ¶95, maintains websites and a blog, id. at ¶96, and "broadcasts its pro-life message through radio segments and television spots." Id.

[2] Although the complaint does not include any allegations that First Bible's religious beliefs prohibit the use of contraception, it is assumed for purposes of this motion only, that First Bible may consider the use of contraception by unmarried people to be contrary to its religious beliefs.

3

"will not hire or retain," or will subject to discipline, employees who, *inter alia,* have an abortion. Id. at ¶¶130-132, 140.   The complaint does not allege that First Bible has an employee handbook, but it does allege that employees are required to "assent" to not have an abortion or engage in sexual activity outside of marriage. Id. at ¶¶130-131.

## ARGUMENT

This case requires the court to weigh and balance the fundamental rights of New York State citizens against the religious beliefs of the plaintiff employers. "The Fourteenth Amendment extends to individuals a fundamental right to privacy. The constitutional right to privacy protects those 'personal rights that can be deemed fundamental or implicit in the concept of ordered liberty,'" Doe v. Putnam Cty., 344 F.Supp.3d 518, 539 (S.D.N.Y. 2018) (quoting Roe v. Wade, 410 U.S. at 152), "including 'matters relating to marriage, procreation, contraception, family relationships, and child rearing and education.'" Id (quoting Paul v. Davis, 424 U.S. 693, 713 (1975)).   Accordingly, "personal decisions" on these topics are constitutionally protected. Lawrence, 539 U.S.  at 573-574 ("personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education" are protected under the Fourteenth Amendment). See also Carey v. Population Servs. Int'l., 431 U.S. 678, 684 (1977) (privacy right in contraception); Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir. 1983) (privacy in in sexual activities); Eastwood v. Dep't of Corrections, 846 F.2d 627, 631 (10th Cir. 1988) (forced disclosure of information about personal sexual matters implicates privacy protections);  Hirschfield v. Stone, 193 F.R.D. 175, 186 (S.D.N.Y. 2000) (description) (citing Carey, 431 U.S. at 684; Thorne, 726 F.2d at 468; Eastwood, 846 F.2d at 631).

In addition, the Supreme Court has held that this constitutionally-protected right to privacy applies to (1) "the individual interest in avoiding disclosure of personal matters,"[3] and (2) "the interest in independence in making certain kinds of important decisions."[4]  Whalen v. Roe, 429 U.S. 589, 599-600 (1977).  Additionally, the Second Circuit has held that "the right to privacy… encompasses 'the individual interest in avoiding disclosure of personal matters.'"  Doe v. Putnam Cty., 344 F.Supp.3d at 540 (quoting Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999)).  See also Hancock v. Cty. of Rensselaer, 882 F.3d 58, 65 (2d Cir. 2018) (recognizing a "right to privacy in one's personal information").  Constitutionally-protected "personal matters" include an individual's health and medical information.  Doe v. Putnam Cty., 344 F.Supp.3d at 540.  See also Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994); Doe v. Marsh, 918 F.Supp. 580, 585 (N.D.N.Y. 1996) (right to privacy applies to medical information).  The right to privacy protects the "confidentiality of private medical information" because "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over."  Doe v. City of New York, 15 F.3d at 267.

Due to their fundamental nature, the state may legislate to protect its citizens' rights to privacy and autonomy.  Boelter v. Hearst Communs., 192 F.Supp.3d 427, n. 15 (S.D.N.Y. 2016) (quoting United Reporting Publ'g Corp. v. California Highway Patrol, 146 F.3d 1133, 1138 (9th Cir. 1998)).

---

[3] This "has been characterized as a 'right to confidentiality.'"  Doe v. Putnam Cty., 344 F.Supp.3d 518, 539 (2018).

[4] This "has been characterized as a…'right to autonomy.'"  Doe v. Putnam Cty., 344 F.Supp.3d at 539.

The plaintiffs' arguments are premised on an assertion that any employee, or dependent of an employee, who uses contraception or has an abortion is acting contrary to the plaintiffs' religious beliefs. However, the State has legitimate, important and compelling interests in protecting its workers' fundamental rights to confidentiality and autonomy in connection with decisions relating to their bodies, health and family planning, and in preventing employers from discriminating against workers for exercising those rights. To further these interests, the State enacted §203-e – a generally applicable anti-discrimination employment statute – with which all New York employers, including religious-based ones, must comply. Since §203-e applies to the plaintiffs as "employers," the plaintiffs are required to comply with it.

The plaintiffs allege that §203-e is unconstitutional both on its face, and as applied to the plaintiffs.[5] Specifically, the plaintiffs allege that, on its face[6] §203-e violates the First Amendment rights to expressive association and free speech and is unconstitutionally vague under the Due Process clause. Dkt. No. 1 at p. 45. Plaintiffs also allege that the statute is unconstitutional as applied to them under these same provisions, as well as in violation of their First Amendment rights to religious autonomy and free exercise. Id.

---

[5] When as applied and facial challenges are brought together, the court must consider the as applied challenge first. Board of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 484-485 (1989). To state an as applied challenge, plaintiffs must allege facts sufficient to show that the application of a statute deprived the plaintiff of a protected constitutional right. Rankel v. Town of Somers, 999 F.Supp.2d 527 (S.D.N.Y. 2014). For the reasons discussed herein, the complaint fails to state a claim that 203-e is unconstitutional as applied to the plaintiffs.

[6] "In a facial challenge brought under the First Amendment, 'the plaintiff must demonstrate that the challenged law either could never be applied in a valid manner or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.'" Restaurant Law Ctr. v. City of New York, 360 F.Supp.3d 192, 208 (S.D.N.Y. 2019) (quoting New York State Club Ass'n, Inc. v. City of N.Y., 487 U.S. 1, 11 (1988) (internal quotation marks omitted)). Although the court need not reach plaintiffs' facial challenges, because the complaint fails to state an as applied challenge, the complaint also fails to state a facial challenge.

POINT I

<u>THE COMPLAINT SHOULD BE DISMISSED</u>

On a motion to dismiss pursuant to FRCP 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." <u>Concord Assocs., L.P. v. Entm't Props. Trust</u>, 817 F.3d 46, 52 (2d Cir. 2016). However, the court is not required to assume that legal conclusions within the complaint are true. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss, a 'district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" <u>CBF Industria DeGusa S/A v. AMCI Holdings, Inc.</u>, 2018 U.S. Dist. LEXIS 100781, *16 (S.D.N.Y. June 15, 2018) (quoting <u>DiFolco v. MSNBC LLC</u>, 622 F.3d 104, 111 (2d Cir. 2010)).

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 50 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Matson v. Bd. of Educ.</u>, 631 F.3d 326, 329 (2d Cir. 2011).

Based on the facts alleged by plaintiffs, the complaint fails to state a cause of action, and all of plaintiffs' claims must be dismissed. First, the complaint fails to allege facts to support a finding that §203-e was enacted for the purpose of discriminating against religious beliefs, and therefore it fails to plead a cognizable free exercise claim. Second, plaintiffs cannot state a religious autonomy claim. Third the statute does not unconstitutionally limit or compel speech. Fourth, 203-e does not unconstitutionally violate plaintiffs' right to expressive association. Fifth,

the statute is not unconstitutionally vague.  As a result, the complaint should be dismissed in its entirety.

## A. **The Complaint Fails to State a Free Exercise Claim**

To "state a free exercise claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that the law's 'purpose…is the suppression of religion or religious conduct.'" Congregation of Rabbinical College of Tartikov, Inc. v. Vill. of Pomona, 915 F.Supp.2d 574, 619 (S.D.N.Y. 2013) (quoting Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533 (1993)). The right of the free exercise of religion does not relieve an individual or entity of the obligation to comply with a "valid and neutral law of general applicability." Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U.S. 872 (1990). As a result, where an alleged limitation on the exercise of religion "is not the object ... but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." Id. at 878. See also Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, 111 F.Supp.3d 459, 484 (S.D.N.Y. 2015) (stating that a "law or regulation that is neutral and of general applicability is constitutional even if it has an incidental effect on religion"). Therefore, a law that only incidentally imposes a burden on the exercise of religion need only be supported by a rational basis. WTC Families for a Proper Burial, Inc. v. City of New York, 567 F.Supp.2d 529, 539-540 (S.D.N.Y. 2008) (quoting Leebart v. Harrington, 332 F.3d 134, 143 (2d Cir. 2003)).

Plaintiffs' free exercise claim should be dismissed because §203-e is a neutral law of general applicability, and any burden on religion is merely incidental. The neutrality of a law is determined by the consideration of relevant factors, including: "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy

8

in questions, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." <u>Church of Lukumi Babalu Aye, Inc. v. Hialeah</u>, 508 U.S. at 540. <u>See also Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n</u>, 138 S.Ct. 1719, 1731 (2018) (applying the neutrality factors). Religious beliefs are not targeted by §203-e, and it is plainly not the "object" of the statute to interfere with plaintiffs', or anyone's, exercise of religion. <u>Church of Lukumi Babalu Aye, Inc.</u>, 508 U.S. at 533 ("if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral."). Rather, the plain text of the statute, as well as its legislative history, clearly establish that the object of the § 203-e is to "prohibit employers from discriminating against employees based on the employees' or dependents' reproductive health decisions, and to provide remedies for such violations." Dkt. Nos. 1-4 at p. 5 & 1-5 at p. 6. Its purpose is to protect an employee's confidentiality and right to privacy. Plaintiffs have not pointed to any circumstances that call into question the statute's neutrality.

Further, the statute is also generally applicable. Both on its face, and when considered in connection with its legislative background, §203-e protects **all** reproductive health decisions made by employees – not just the rights to use contraception or have an abortion. The statute equally protects the rights of employees **not** to use contraception or have an abortion. For instance, §203-e protects an employer from firing a sixteen-year-old pregnant employee who chooses to continue a pregnancy and have a child. The statute applies to all New York employers, regardless of their religious nature or beliefs, and is drafted to protect all reproductive health decisions, including those of which the plaintiffs approve. Accordingly, §203-e is generally applicable.

Since it is both generally applicable and neutral, §203-e need only be supported by a rational basis. <u>See Fortress Bible Church v. Feiner</u>, 694 F.3d 208, 220 (2d Cir 2012). <u>See also</u>

9

Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1076 (9th Cir. 2015).  Employment antidiscrimination laws, both federally, and in New York State, have evolved over time in a continuing effort to protect employees from discrimination in the workplace, and the object of §203-e furthers that significant government interest. See e.g.  42 U.S.C. §2000e et seq. (Title VII); 42 U.S.C. §12101 et seq. (ADA); N.Y. Exec Law §290, et seq (N.Y. Human Rights Law), N.Y. Labor Law §201-g (prevention of sexual harassment in the workplace). The statute is also rationally related to furthering the State's interests in protecting an individual's right to confidentiality and autonomy. It does this by prohibiting an employer from accessing personal information relating to reproductive decision-making and by prohibiting discrimination on the basis of such decision-making. Therefore, when read in connection with the statute's explicit, intended purpose, the allegations in the complaint that plaintiffs' religious beliefs are incidentally affected by the statute are insufficient to state a First Amendment free exercise claim.

Plaintiffs nonetheless allege that §203-e does not support a legitimate interest because a Legislator could not identify any instance of discrimination by an employer based on an employee's reproductive health care decisions in New York.  Dkt. No. 1 at 149-155.  Certainly, when over 100 lawsuits have been filed in this country by employers seeking to infringe on employee's fundamental constitutional rights to privacy and personal autonomy, Dkt. Nos. 1-4 at p. 5 & 1-5 at p. 7, New York is not required to wait for an actual violation of the rights of its citizens to legislate to protect them.

Plaintiffs allege that §203-e targets religion based on a statement by one Legislator. Dkt. No. 1 at ¶¶10-13. The complaint alleges that §203-e's "main sponsor in the New York Senate, Senator Jennifer Metzger, expressed the view on the Senate floor that lawsuits filed by employers to protect themselves from having to provide abortifacient drugs under the Affordable Care Act's

(ACA) contraceptive mandate were tantamount to a denial of reproductive services," id. at ¶11, and "lamented these lawsuits, and characterized them, along with the United States Supreme Court decision in Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014)…as a 'dangerous, slippery slope.'" Id. at ¶12. The complaint further alleges that Senator Metzger "declared that the purpose of [§203-e] was to prevent employers' religious exercise, and their 'personal and political beliefs,' from 'encroach[ing]' on the decisions of employees as to reproductive health services." Id. at ¶13.

However, when Senator Metzger's actual words are read, they directly articulate the state's interest in enacting §203-e:

> We are on a dangerous, slippery slope in this country when it comes to protecting an individual's right to privacy and autonomy in decision making about family planning and reproductive health. Since enactment of the Affordable Care Act, over 100 lawsuits have been filed by employers determined to deny workers coverage of reproductive health services and products based on the employer's own personal and political beliefs.

Dkt. No. 1-2 at p. 433. Senator Metzger then stated:

> The Boss Bill seeks to prevent this further encroachment by employers into the private decisions of employees on matters that have nothing to do with the performance of their job.
>
> Choosing whether, when and how to have children is a decision for individuals and their families. No one should have fear that they will lose their job or be demoted because of their own private reproductive health decisions.

Id. at 434. These words explicitly demonstrate that the state's interest in enacting §203-e was to protect individual rights of privacy and autonomy and prohibit employers from taking any employment action against employee based on an employer's own personal beliefs. Id.   While Senator Metzger cited Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014), as an example of an employer's efforts to limit its employee's rights to privacy and autonomy, Dkt. No. 1-2 at

433-434, that case involved a federal statute, not implicated by §203-e[7], and such a reference to one of "over 100 lawsuits" does not somehow raise an issue of fact as to the real reason for the enactment of the statute. Senator Metzger's comments therefore do not raise an inference that the statute was targeted toward religion.

In any event, the "remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." Chrysler Corp. v. Brown, 441 U.S. 281, 311 (1979)). See also Citizens Union of City of New York v. Attorney Gen. of New York, 269 F. Supp. 3d 124, 147 (S.D.N.Y. 2017) ("Even in cases where legislative motive is relevant to the merits of a claim, courts have observed that 'it is the motivation of the entire legislature, not the motivation of a handful of voluble members[ ] that is relevant.'" (quoting South Carolina Edu. Ass'n v. Campbell, 883 F.2d 1251, 1262 (4th Cir. 1989)).

In fact, the Second Circuit has held that isolated remarks are to be afforded little or no weight, especially if such remarks are unclear or conflicting, as distinguished from a legislative committee's formal report on its enactment. Murphy v. Empire of America, FSA, 746 F.2d 931, 935 (2d Cir. 1984) (citing Chrysler Corp., 441 U.S. at 311). Similarly, the Supreme Court in United States v. O'Brien, 391 U.S. 367, 383–84 (1968), held that inquiries into legislative motives "are a hazardous matter," and distinguished an instance of statutory interpretation from a situation, such as the current one, where a Court is asked to invalidate a statute that is constitutional on its face, "on the basis of what fewer than a handful of [legislators] said about it." Id. New York State courts have taken a similar view of legislator comments. See, e.g., Knight-Ridder Broad., Inc. v.

---

[7] Burwell v. Hobby Lobby, 573 U.S. 682 (2014), involved an analysis of the federal Religious Freedom Restoration Act (RFRA), which does not apply to the States. 42 U.S.C. §2000bb-2; City of Boerne v. Flores, 521 U.S. 507, 536 (1997).

12

Greenberg, 70 N.Y.2d 151, 159 (1987) (the views of one legislator are not necessarily indicative of the legislative intent).

The motive of the Legislature in enacting §203-e was unambiguous: to prohibit employers from taking adverse actions against employees based on private employee decisions relating to their own health care and family planning that are contrary to the personal beliefs of their employers. This motive was also articulated in the Assembly's Memorandum of Legislation, Dkt. No. 1-4, and Senate's Sponsor Memorandum, Dkt. No. 1-5 as follows:

> This bill ensures that employees or their dependents are able to make their own reproductive health care decisions without incurring adverse employment consequences. The federal Affordable Care Act (ACA) recently required that health insurance plans cover FDA-approved birth control methods without out-of-pocket costs. Some for-profit employers have attempted to prevent employees from accessing this benefit because it conflicts with their personal beliefs. As a result, over 100 federal lawsuits have been filed by employers to deny employees this benefit, including employers operating in New York State. Employers should not be able to discriminate or interfere in employees' personal medical decisions.
>
> While federal and state laws have been enacted which demonstrate a commitment to protect individuals against employment discrimination, loopholes exist which leave employees vulnerable to discrimination based on their reproductive health decisions. The Legislature must ensure that the legal loopholes are corrected to ensure that employees' decisions about pregnancy, contraception, and reproductive health are also protected under state law.

Dkt. Nos. 1-4 at p. 5 & 1-5 at p. 7.

The legislative history also articulates the following state interests of 203-e:

> This bill would prevent an employer from discriminating against employees based on reproductive health decisions, regardless of how the employer became aware of those decisions…[HIPAA] does offer a high level of confidentiality with regard to medical care and decisions. However, an employer does receive health insurance utilization summaries, which are distributed to each employer on a regular basis. In these reports, personally identifiable information is excluded to comply with privacy protections of HIPAA. However, in some cases, an individual's identity may still be deduced by an employer based on the nature of the service and composition of the insured class reported in the summaries. While a violation of HIPAA would be an actionable violation of privacy, there are other avenues in

which an employer may become aware of their employees['] personal information. It is not unlikely that this information could be unintentionally disclosed by a co-worker, discovered through social media or electronic surveillance currently available, or even disclosed through a personal admission by the employee. Reproductive health care decisions, while usually kept private, should not become society's new discrimination based on the reproductive health care decisions they make. This legislation will provide that protection.

Dkt. Nos. 1-4 at pp. 5-6 & 1-5 at p. 7. In light of the overwhelming evidence in the legislative history of 203-e that the statute was not enacted for the purpose of targeting religion, plaintiffs' efforts in pointing to statements by an individual Legislator as alleged evidence of religious animus fails as a matter of law. Accordingly, plaintiffs' free exercise challenge – both facially and as applied – must be dismissed.

### B. **The Complaint Fails to State a Religious Autonomy Claim**

"Religious autonomy means that religious authorities must be free to determine who is qualified to serve in positions of substantial religious importance." Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. 171, 200 (2012) (Thomas, J. concurring). It is this principle upon which the "ministerial exemption is based." Id. "In adopting the 'ministerial exception' under the principles of the First Amendment, courts have held that a religious organization's hiring decisions regarding ministers and clergy are completely immune" from employment anti-discrimination statutes. Redhead v. Conf. of Seventh-Day Adventists, 440 F.Supp.2d 211, 217 (E.D.N.Y. 2006). While churches and religious organizations may be subject to certain employment anti-discrimination laws, "courts have held that hiring decisions are protected [from the dictates of anti-discrimination laws] because 'a church's selection of its own clergy is [a] core matter of ecclesiastical governance with which the state may not constitutionally interfere.'" Id.

14

Principles of religious autonomy in connection with employment matters "is a judicially created doctrine relevant to whether a religious organization's hiring decisions **regarding a particular individual** should be insulated based on First Amendment concerns." Id. at 220 (emphasis added). While churches and religious organizations may make employment decisions about ministers and clergy without government interference under this doctrine, its applicability to other employees of a church or religious organization requires a very fact-specific analysis of that employee's duties. If "'the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered 'clergy'" under this doctrine. Id. at 220.

Plaintiffs argue that the Legislature's failure to include the ministerial exemption within the text of the statute somehow violates plaintiff's First Amendment rights, or is evidence of religious animus.   However, upon enacting a statute, it is "assumed that the Legislature intended to enact a statute which is in harmony with the federal and state constitutions." McKinney's Cons. Law of N.Y., Book 1, Statutes, §150 at p. 2. It is, therefore, not necessary to include within the text of the statute every conceivable exemption from compliance with a statute. For instance, the ministerial exemption is not included within the text of Title VII, 42 U.S.C. §2000e et seq., but yet it is a long-recognized exception to the applicability of the federal anti-discrimination statute. Rweylemamu v. Cote, 520 F.3d 198, 205-209 (2d Cir. 2008).   "[J]ust as there is a ministerial exception to Title VII, there must also be a ministerial exception to any state law cause of action that would otherwise impinge on the church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers.'" Washington v. African Methodist Episcopal Church, Inc., 2011 U.S. Dist. LEXIS  108117, *6

15

(W.D.N.Y. Sept. 16, 2011) (quoting Bollard v. California Province of the Soc'y of Jesus, 196 F.3d 940, 950 (9th Cir. 1999)).

When §203-e was enacted, it was done so within the context of established constitutional principles, including the right of churches to govern their internal affairs without government intrusion. In fact, the legislative history of 203-d recognized that the ministerial exemption is an affirmative defense that may be raised by a defendant employer to defend against a lawsuit brought by an employee. Dkt. No. 1-3 at pp. 124-125, 127.

Therefore, any religious institution that enjoys the protection of the ministerial exemption under the Constitution continues to do so. However, the applicability of the exemption is fact-specific, requiring analysis of the of the mission of the employer, and the specific primary duties of the employee at issue in a particular set of circumstances. For instance, it may be the case that 203-e cannot prevent employment actions being taken against the pastor of First Bible, or the principal of Northstar Christian Academy, Fratello v. Archdiocese of N.Y., 863 F.3d 190, 192 (2d Cir. 2017), because the duties of such employees are deemed that of clergy under First Amendment analysis. However, it would likely not protect a medical provider at CompassCare, an office secretary at First Bible, or a soccer coach at Grace and Truth Athletics and Sports Park. See e.g. Aparcio v. Christian Union, 2019 U.S. Dist. LEXIS 55938, **12-19 (S.D.N.Y. 2019) (director of public affairs for a religious evangelistic ministry does not fall under the ministerial exception); Biel v. St. James Sch., 911 F.3d 603, 606-611 (9th Cir. 2018) (fifth grade teacher at a religious school does not fall under the ministerial exception); Puri v. Khalsa, 844 F.3d 1152, 1158-62 (9th Cir. 2017) (board members of a Sikh religious organization do not necessarily fall under the ministerial exception). As case law makes clear, whether or not the First Amendment protects the religious rights of religious employers to make their own employment decisions

16

depends on the relevant employee's function within the religious organization. Assuming plaintiffs are entitled to application of the ministerial exception with respect to certain employees, nothing in §203-e precludes application of that exception.

However, plaintiffs are not entitled to a blanket declaration that they are exempt from §203-e in all circumstances, because an analysis of the applicability of the exemption requires analysis of the duties of a particular employee. The complaint fails to identify any particular employee that the plaintiffs wish to take employment action against, therefore, the complaint fails to allege a religious autonomy claim.

Plaintiffs argue that they should not have to be sued to get the protection of the ministerial exception when appropriate. While employees bringing private suits may be unaware of the rights of some religious organizations to govern themselves without state involvement, certainly the defendants herein – as the Governor, Commissioner of the Department of Labor and the Attorney General – can be expected to enforce 203-e within the confines of clearly established constitutional law. Rweyemamu, 503 F.3d at 206 ("the ministerial exception' is well entrenched; it has been applied by circuit courts across the country for the past thirty-five years").

As this lawsuit is not about any particular employee, it necessarily fails to implicate recognized issues of religious autonomy protected by the First Amendment. Accordingly, plaintiffs' Third Claim should be dismissed.

C. **The Complaint Fails to State a Free Speech Claim**

The First Amendment guarantee of free speech extends to "the right to refrain from speaking." Wooley v. Maynard, 430 U.S. 705, 714 (1977). The First Amendment further protects the right to be free from government-compelled speech or expressive conduct. Rumsfeld v. Forum

17

for Academic and Institutional Rights, Inc., 547 U.S. 47, 61 (2006); West Virginia State Bd. of Ed. v. Barnette, 319 U.S. 624, 642 (1943)). Thus, "the government may not require an individual to personally speak a governmental message or require an individual 'to host or accommodate another speaker's message.'" Rumsfeld, 547 U.S. at 63.

The plaintiffs allege that §203-e violates their rights to free speech in three ways. First, plaintiffs allege that the statute prohibits them from requiring employees to sign documents assenting to, *inter alia*, not using contraception or having abortions, and limits their ability to take adverse employment actions against employees who, *inter alia*, use contraception or have abortions. Specifically, plaintiffs allege that §203-e "forbids them from maintaining and communicating employment standards of conduct in accordance with organizational beliefs regarding reproductive services...." Dkt No. 1 at ¶264. Second, plaintiffs allege that §203-e "compels them to speak a message contrary to their beliefs not only to their current employees but also to prospective employees and the public in general." Dkt. No. 1 at ¶265. Third, plaintiffs allege that 203-e compels them to endorse the use of contraception and abortion by requiring that employers include language outlining the protections of § 203-e in an employee handbook, if they choose to have one. Dkt. No. 1 at ¶¶267-268. As explained below, the statute does not implicate plaintiffs' free speech rights and, thus, none of plaintiffs' arguments has merit.

1. *The Right to Free Speech is Not Implicated By Prohibiting Plaintiffs From Taking Adverse Employment Actions Against Employees*

"[F]reedom of speech prohibits the government from telling people what they must say," not what they must do, Rumsfeld, 547 U.S. at 61, and the Supreme Court has made clear that nondiscrimination laws like that at issue here "regulate[] conduct, not speech." Id. at 60, 61.

In Our Lady's Inn v. City of St. Louis, 349 F.Supp.3d 805 (E.D. MI 2018), the court considered an ordinance almost identical to §203-e. In rejecting the religious plaintiffs' free

18

speech challenge, the court held that the law "restricts conduct, namely, discrimination in housing and employment on the basis of reproductive health decisions," and therefore to the extent that it "restricts speech, it does so only incidentally to regulating conduct and therefore does not implicate the First Amendment." Id. at 819-820.

Similarly here, when New York prohibits employers from discriminating against employees based on reproductive healthcare decisions, it is prohibiting conduct. Its regulation does not constitute a prohibition on speech merely because it prevents an employer from announcing that it will only employ people who have never had an abortion or used contraception. As the Supreme Court explained in confirming the longstanding principle that prohibitions on discrimination regulate conduct, not speech: "Congress, for example, can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." Rumsfeld, 547 U.S. at 62.

The prohibition against requiring employees to "waive" their agreement to, *inter alia*, not use contraception or have an abortion, is also a limitation on what an employer may not do, not what it may not say and likewise only incidentally affects speech.[8]   Accordingly, by limiting employers' conduct, 203-e does not implicate free speech protections.

2. *Prohibiting Discrimination Does Not Limit Plaintiffs' Ability to Communicate Their Message*

Section 203-e does not compel plaintiffs "to speak a message contrary to their beliefs." Nothing in §203-e limits what the plaintiffs, or any employer, may say, or not say, about

---

[8] Nothing about §203-e prohibits employees from voluntarily "assenting" or agreeing to live in accordance with an employer's religious beliefs; but an employer cannot force an employee to waive her or his rights to privacy and autonomy.

reproductive health choices such as contraception or abortion.  Instead, as discussed above, §203-e limits only what an employer may not do to an employee upon learning of an employee's private decisions about his or her own personal health care.  Specifically, the statute prohibits an employer from taking "any personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive health decision making," N.Y. Labor Law §203-e(2)(a); it does not limit any message that the employer wishes to convey.

Nothing about §203-e precludes employers from including positional statements or encouraging employees to voluntarily agree to live according to certain principles.  Employers are free to include whatever messages they want in a handbook, and employees may voluntarily agree to live in accordance with whatever beliefs they wish.

Additionally, nothing about complying with §203-e could even arguably be deemed to constitute an "endorsement" of contraception or abortion by the plaintiffs.  In fact, §203-e only applies **after** an employee – with no involvement of the employer – makes a reproductive health care decision. Conduct is considered expressive only if the speaker intends to "convey a particularized message" and it is likely that the message would be understood by those to whom it was conveyed. Catholic Charities of Diocese of Albany v. Serio, 28 A.D.3d 115, 129-30 (3d Dep't 2006). Plaintiffs' hiring of its employees is not intended to convey a particularized message regarding reproductive health choices and given plaintiffs' well-known beliefs about reproductive health choices, there is no great likelihood that their hiring decisions "would be perceived as anything more than compliance under protest with a statutory mandate that is generally applicable to all employers…, rather than conduct undertaken for an expressive purpose." Id. Instead, §203-e simply prevents employers from taking any action against an employee for a

private decision made by the employee with no involvement of the employer. Therefore, §203-e does not limit plaintiffs' ability to speak their message.

### 3.   *The Handbook Requirement Does Not Unconstitutionally Compel Speech*

The handbook requirement only compels the inclusion of language informing employees of their rights under the statute and does not, as characterized by the plaintiffs, "compel Plaintiffs to encourage their employees to utilize the statute." Dkt. No. 1 at ¶267. While the required handbook notice may not be something that the plaintiffs would voluntarily include in employee handbooks, it is not unconstitutionally-compelled speech.

"Under the First Amendment, an entity's mere transmission of others' speech does not necessarily constitute speech of that entity." Restaurant Law Ctr. v. City of New York, 360 F.Supp.3d 192, 210 (S.D.N.Y. 2019). There can only be a First Amendment violation is such situations where "the complaining speaker's own message was affected by the speech it was forced to accommodate.'" Id. at 212 (quoting Rumsfeld, 547 U.S. at 63).

As discussed above, §203-e applies to all employers and, therefore, its applicability is not based on the content of an employer's speech. Congregation Rabbinical College of Tartikov, 138 F.Supp.3d at 426. Additionally, the statute was enacted to protect individuals' rights to privacy and autonomy and prohibit discrimination. The handbook requirement furthers these state interests and does not violate the First Amendment right to free speech. Instead of advocating any position, it simply requires employers to state purely factual and accurate information. "[M]andated disclosure of accurate, factual…information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests." National Elec. Mfrs. Ass'n. v. Sorrell, 272 F.3d 104, 114 (2d Cir. 2001). The "individual liberty interests" that "may be impaired when personal or political speech is mandated by the state," are not typically

21

affected by compelled disclosure of accurate factual information. Id.  Therefore, compelled speech that is accurate and factual in nature need only satisfy the rational basis standard. Id. at 115.

While cases discussing compelled disclosure of accurate and factual information tend to be in the commercial context, see e.g. id. at 107 (compelling label language that product contains mercury); New York State Rest. Ass'n v. N.Y. City Bd. of Health, 556 F.3d 114, 117 (2d Cir. 2009) (compelling chain restaurants to post calorie content information on menus and boards), the same principles apply in the employer-employee context.  Employers are routinely required to inform employees of certain accurate factual information, such as (1) policies to prevent sexual harassment, N.Y. Labor Law §201-g (requiring employer disclosure to employees); (2) information about how, what and when employees will be paid, id. at §195 (requiring employer to disclose information to employees); (3) employees' rights related to toxic substances in the workplace, id. at §876 (requiring employer to post notice of rights in the workplace); (4) rights during a physical examination, id. at §206-a (requiring employer to post notice of rights); (5) 9 N.Y.C.R.R. §466.1 (requiring employer to post employees' rights under the Human Rights Law).[9]  Compelled disclosures of such accurate factual information by employers should be subject to the same standard as those in the commercial context; they should be rationally related to a legitimate state interest.

Section 203-e furthers several such important legitimate and compelling state interests.  As discussed above, it furthers (1)  the state's interest in prohibiting discrimination by employers; (2) the state's longstanding interest in protecting individuals' rights to make private health care and family planning decisions, including whether to use contraception or end a pregnancy; and (3) the

---

[9] See also https://labor.ny.gov/workerprotection/laborstandards/employer/posters.shtm (non-exhaustive list of compelled employer disclosures).

state's interest in protecting the confidentiality of individuals' medical records and health information. The handbook requirement of the statute also furthers the state's interest in ensuring that employees are aware of their rights in the workplace. These interests are all unrelated to speech.

The handbook requirement does not burden substantially more speech than necessary to further these interests. First, it only applies to employers who have employee handbooks. It does not require employers who do not have handbooks – like First Bible -- to say anything about §203-e to employees. Second, it requires only that the handbook include "notice of employee rights and remedies" under §203-e. N.Y. Labor Law §203-e(6). It does not dictate how that notice is given, or any particular language. Id. It does not limit what else an employer may say in its handbook about contraception, abortion or any other reproductive health care topic. Restaurant Law Ctr., 360 F.Supp.3d at 213 (the law did "not interfere with…employers' ability to communicate their own message…[E]mployers are free to donate to causes they support, and to indicate their disagreement with the policies of organizations that their employees donate to."). Third, it only requires inclusion of an accurate factual statement about employees' rights; not any position of the employer.

For all of these reasons, the complaint fails to state a free speech claim and, accordingly, plaintiffs' Second Claim should be dismissed in its entirety.

D.     **The Complaint Fails to State a Freedom of Expressive Association Claim**

The First Amendment protects the "'right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" Boy Scouts of America v. Dale, 530 U.S. at 640, 647 (2000) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984)). However, the freedom of association "is not absolute." Id. at 648. As explained

below, incidental burdens on associational interests do not violate the First Amendment. Indeed, unless the burden on expressive association rights is "severe," the statute need only be supported by a rational basis. Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, 852 F.3d 178, 191 (2d Cir. 2017)

Not every group can assert an expressive-association right; the right can be asserted only by those engaged in "expressive association." Id. Moreover, a mere kernel of expression is not sufficient, since "the fact that an activity contains a 'kernel of expression' does not compel the conclusion that the activity qualifies as a form of 'expressive association' and is shielded by the First Amendment." United States v. Thompson, 896 F.3d 155, 164 (2d Cir. 2018) (quoting Dallas v. Stanglin, 490 U.S. 19, 25 (1989)). The group's conduct must instead be intended "'to convey a particularized message.'" Id. (quoting Texas v. Johnson, 491 U.S. 397 (1989)).

The complaint fails to allege that that the plaintiffs are groups of people who associate with others "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts, 468 U.S. at 622. Instead, it alleges that CompassCare is a pregnancy care center that provides medical testing, counseling and information to pregnant women. Dkt. No. 1 at ¶¶55-61.  NIFLA is a membership organization comprised of pregnancy care centers like CompassCare. Id. at ¶¶97-102.  First Bible is a church that supports ministries such as a school and athletic complex. Id. at ¶¶114, 133, 137.  While the complaint alleges that all three plaintiffs hold sincere religious beliefs that permeate their missions, id. at ¶¶64-80, 108, 115-139, they do not constitute groups comprised of members who come together to convey a message. It is not enough that the plaintiffs' religious beliefs guide their provision of services.  Such a "kernel of expression" is insufficient to implicate the First Amendment's expressive association protections. However, even if, *arguendo*, the complaint is read to include allegations sufficient to qualify the

24

plaintiffs as expressive associations protected by the First Amendment, the complaint nevertheless fails to state a freedom of association claim.

Plaintiffs allege that §203-d forces them to include and accept an employee that they do not want. "The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." Boy Scouts of America, 530 U.S. 640 at 647.

Here, any burden on expressive association rights by §203-e is merely incidental, and thus insufficient to state a claim. "Mere incidental burdens on the right to associate do not violate the First Amendment; rather, to be cognizable, the interference with plaintiffs' associational rights must be direct and substantial or significant." Tabbaa v. Chertoff, 509 F.3d 89, 101 (2d Cir. 2007) (internal quotation and alteration from original omitted); accord Fighting Finest v. Bratton, 95 F.3d 224, 228 (2d Cir. 1996) (citing Lyng v. Intl. Union, 485 U.S. 360, 367 & n.5 (1988)). For the same reasons, discussed above, that any burden on plaintiff's free exercise of religion is incidental, so is any burden on plaintiffs' expressive association rights. Plaintiffs are not precluded from hiring only those employees who agree with their sincerely held religious beliefs. Rather, they are precluded from discriminating against prospective employees and employees on the basis of the employees' personal healthcare decisions, regardless of whether such conduct is contrary to their professed beliefs. Plaintiffs fail to show how their employees' personal and private reproductive healthcare decisions would impact the expressive viewpoint of the organization.

However, even if, *arguendo*, the statute did burden plaintiffs' associational rights, any burden does not violate the First Amendment. In connection with First Amendment associational rights, the Second Circuit has "instructed that, depending on the burden that the statute imposes on those rights, [it] will 'apply either strict scrutiny, in which case the restriction survives only if

it is narrowly drawn to advance a compelling state interest, or rational basis review, in which case the restriction need only be rationally related to a legitimate government interest.' Strict scrutiny applies only when a challenged regulation imposes "severe burdens" on associational rights." Jacoby & Meyers, LLP, 852 F.3d at 191 (quoting Kraham v. Lippman, 478 F.3d 502, 506 (2d Cir. 2007)).[10] No such "severe burden" is imposed by §203-e because, as noted, the inclusion of individuals who make private reproductive healthcare decisions with which plaintiffs disagree does not impinge on any message that the organization seeks to convey. The personal and private conduct of plaintiffs' employees does not impair any message that the plaintiffs seek to convey. Unlike the facts of the leading case of Boy Scouts of Am. v. Dale, 530 U.S. 640 (2000), plaintiffs do not seek to inculcate others with their beliefs through the private behavior of their employees. Id. at 649-650 (forced inclusion of gay scout leader impinged associational rights of the Boy Scouts because scout leaders were hired to inculcate values in members through example). Therefore §203-e need only pass rational basis review.

Section 203-e was not enacted for the purposes of (1) limiting with whom the plaintiffs could associate for expressive purposes, or (2) suppressing ideas. Instead, as discussed herein throughout, §203-e was enacted to "prohibit employers from discriminating against employees based on the employees' or dependents' reproductive health decisions...," Dkt. Nos. 1-4 at p. 5 & 1-5 at p. 6, and to protect New Yorkers' rights to privacy and autonomy in their healthcare and family planning decisions and records and information related thereto. Therefore, §203-e is rationally related to the state's interest in protecting employees from discrimination based on their

---

[10] By letter dated January 17, 2020, defendants requested permission from the court to submit a memorandum of law in excess of twenty-five pages, and counsel for the plaintiff consented to this request. Dkt. No. 18. If the court denies this request, defendants respectfully request that they be permitted to substitute this memorandum with another.

private, legal choices. New Hope Family Servs. v. Poole, 387 F.Supp.3d 194, 219-220 (N.D.N.Y. 2019) (the state's interest in prohibiting discrimination "far exceeds" any harm to plaintiff's expressive association).

Finally, even if, *arguendo*, §203-e imposes a "severe" burden on plaintiffs' expressive association rights, the statute withstands strict scrutiny. Roberts, 468 U.S. at 623. Prohibiting discrimination against employees by employers based on an employee's exercise of her right to make lawful reproductive health decisions without employment repercussions is a compelling state interest. Additionally, there is no less restrictive way to prevent employers from discriminating against employees based on reproductive health decisions other than prohibiting it. As discussed above, constitutional law already provides for an exemption from this, and any other, law that burdens a religious organization's ministerial decisions relating to "an internal church decision that affects the faith and mission of the church itself." Hosanna-Tabor Evangelical Lutheran Church & Sch., 565 U.S. at 173 (2012). Within this context, §203-e is narrowly tailored to advance compelling state interests.

Our Lady's Inn, relied on by plaintiffs, is distinguishable on two grounds. First, the district court in that case interpreted the relevant ordinance as requiring the plaintiffs to employ individuals who do not share the plaintiffs' beliefs. Our Lady's Inn, 349 F.Supp.3d at 821. Here, §203-e protects only the employees' personal and private reproductive healthcare decision-making. It does not preclude the plaintiffs from requiring that employees agree to espouse the plaintiffs' message. Moreover, the court in Our Lady's Inn, noted that the City defendant relied on one non-specific hearsay affidavit by a lawmaker to demonstrate the importance of the ordinance's anti-discrimination purpose. Id. at 821-22. Here, the legislative history of §203-e demonstrates that the statute was enacted in response to over 100 lawsuits brought by employers seeking to limit

27

employees' fundamental rights to privacy and autonomy in their own health care and family planning decisions. The existence of these legal challenges serves as sufficiently compelling justification for New York to take action to ensure that its workers' fundamental rights are not violated by their employers.

Because §203-e does not unconstitutionally burden plaintiffs' right to expressive association, plaintiffs' First Claim should be dismissed.

E. **The Statute is Not Unconstitutionally Vague**

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). See also Evergreen Ass'n v. City of New York, 740 F.3d 233, 243 (2d Cir. 2014); Vermont Right to Life Comm., Inc. v. Sorrell, 758 F.3d 118 128 (2d Cir. 2014). Plaintiffs allege that §203-e is void for vagueness because (1) it does not define certain terms, Dkt. No. 1 at ¶¶332, 333, 335, and (2) fails to describe how the statute may be enforced by the State, id. at ¶¶224, 336-337, thereby leaving plaintiffs "to guess" what employees, employers and employment decisions are covered by the statute. Id. at ¶338. These arguments must fail.

Plaintiffs allege that the terms "reproductive health decision making," "employer" and "employee," and the phrase "proposes to commit a violation of the provisions of this section," are not defined in §203-e, thereby making the statute unconstitutionally vague. Specifically, plaintiffs allege that the absence of these definitions leaves employers to guess what employee decisions implicate §203-e, and what employees/employers are covered or exempt.

28

A "'statute which employs terms having an accepted meaning 'long recognized in law and life' cannot be said to be so vague and indefinite as to afford the [party] insufficient notice of what is prohibited or inadequate guidelines for adjudication…'" Rupp v. City of Buffalo, 2019 U.S. Dist. LEXIS 133868, 34 (W.D.N.Y. Aug. 7, 2019) (quoting People v. Cruz, 48 N.Y.2d 419, 428 (1979)) (internal quotations omitted). The terms complained of by the plaintiffs are sufficiently specific. First, the terms "employer" and "employee" are specifically defined in the Labor Law, N.Y. Labor Law §2(5)&(6), and used throughout. It seems that plaintiffs' real argument is that, by not including an exemption for "religious employers," or employees thereof, the use of the terms "employer" and "employee" in the statute lacks necessary specificity. As discussed above, nothing about §203-e strips religious organizations from making any employment decision related to their internal governance, as protected by the First Amendment. Accordingly, it is not necessary for the text of the statute to explicitly state that employers and employees subject to the ministerial exemption are not subject to §203-e.

Second, the plain meaning of the term "reproductive health decision making" is clear and unambiguous, making a definition unnecessary. Smith v. United States, 508 U.S. 223, 228 (1993) (a statutory term must be interpreted "in accord with its ordinary or natural meaning"). See also Matter of Saratoga Cty. Economic Opportunity Council, Inc. v. Village of Ballston Spa Zoning Bd. of Appeals, 112 A.D.3d 1035, 1037 (3d Dept 2013) (when terms are not defined in the relevant legislation, the court "look[s] to the plain meaning of those terms"). Indeed, the statute provides examples of reproductive health decision making to include decisions to "use or access a particular drug, device or medical service." N.Y. Labor Law §203-d(1) &(2)(a)& (2)(b). Plaintiffs appear to have had no difficulty determining that contraception use and

abortion services are covered by the statute, since it is decisions about those potential issues upon which this lawsuit is based.

Third, plaintiffs allege that §203-e "does not define the phrase 'proposes to commit a violation of the provisions of the same section,' at the same time it permits significant punishment and penalties for an employer who 'proposes' to do so." Dkt. No. 1 at ¶335. This quoted language is included in §203-e(3), which outlines relief that a court may grant in a private civil action brought by an employee. N.Y. Labor Law §203-e(3). Specifically, §203-e(3)(b) provides that a court may "afford injunctive relief against any employer that commits or proposes to commit a violation" of §203-e. Id. at §203-e(3)(b). It is well-established that injunctive relief may be awarded in a civil action to prevent a party from acting in a manner in which it proposes or threatens. See e.g. Morel v. Giuliani, 927 F.Supp. 622, 634 (S.D.N.Y. 1995) ("Plaintiffs seek injunctive relief against Defendants['] proposed conduct"). In fact, the plaintiffs here seek injunctive relief to prevent the defendants from taking any action proposed by the statute. There is no ambiguity in the language challenged by the plaintiffs sufficient to deem the statute void for vagueness. Vermont Right to Life Comm., Inc., 758 F3d at 128-131 (finding various words and phrases not vague).

Plaintiffs also allege that the statute does not contain provisions detailing "the means by which" §203-e will be enforced by the State, or what penalties may be applied. The statute is contained within the Labor Law and is, therefore, subject to the enforcement provisions therein. N.Y. Labor Law §§21, 213. Additionally, what is prohibited by §203-e is specifically set out in the text of the statute with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Morrison, 686 F.3d 94, 103 (2d Cir. 2012). The statute plainly

states that an employer cannot access an employee's records relating to reproductive health care, and cannot take any adverse employment action against an employee based on that employee's reproductive health care decisions. The text of the statute is sufficiently definite and clear and is not vague.

For all of the reasons, the complaint should be dismissed in its entirety with prejudice.

POINT II

<u>PLAINTIFFS HAVE FAILED TO ESTABLISH
ENTITLEMENT TO A PRELIMINARY INJUNCTION</u>

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" <u>New Hope Family Servs.</u>, 387 F.Supp.3d at 208 (quoting <u>Moore v. Consol. Edison Co.</u>, 409 F.3d 508, 510 (2d Cir. 2005)). Ordinarily, to establish entitlement to a preliminary injunction, a movant must prove "'a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party.'" <u>New Hope Family Servs.</u>, 387 F.Supp.3d at 208 (quoting <u>Allied Office Supplies, Inc., v. Lewandowski</u>, 261 F.Supp.2d 107, 108 (D. Conn. 2005)). Here, however, because plaintiffs seek to stay "governmental action taken in the public interest pursuant to a statutory or regulatory scheme," they may not obtain an injunction by meeting that second less rigorous "serious questions" standard. <u>Otoe-Missouria Tribe of Indians v. New York State Dept. of Fin. Servs.</u>, 769 F.3d 105, 110 (2d Cir. 2014) (internal quotation omitted). As the Second Circuit has explained, "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of

31

deference and should not be enjoined lightly." <u>Able v. United States</u>, 44 F.3d 128, 131 (2d Cir. 1995).

Plaintiffs cannot satisfy the heavy burden necessary to warrant the imposition of preliminary injunctive relief. First, for the reasons discussed above in connection with defendants' cross-motion to dismiss the complaint, the plaintiffs cannot succeed on the merits of their claims as a matter of law. As the plaintiffs correctly state, "'the likelihood of success on the merits is the dominant, if not dispositive, factor'" in determining whether a preliminary injunction should be granted. Dkt. No. 17-1 at p. 7 (quoting <u>New York Progress & Protections PAC v. Walsh</u>, 733 F.3d 483, 488 (2d Cir. 2013)). Therefore, since the defendants are likely to succeed on the merits of this case, plaintiffs' motion for preliminary injunctive relief should be denied.

Second, the plaintiffs have failed to offer any evidence that they will suffer any non-speculative threat of irreparable harm if preliminary injunctive relief is not granted. Finally, even if the equities are considered, the equities require that §203-e remain in effect during the pendency of this action to protect the rights of New York workers.

## A. Plaintiffs Have Not Met Their Burden of Establishing Irreparable Harm

"[T]he award of preliminary injunctive relief can and should be predicated only on the basis of a showing that the alleged threats of irreparable harm are not remote or speculative but are actual and imminent." <u>State of New York v. Nuclear Regulatory Com.</u>, 550 F.2d 745, 755 (2d Cir. 1977). It "cannot rest on mere hypotheticals." <u>Hancock v. Essential Resources, Inc.</u>, 792 F.Supp. 924, 928 (S.D.N.Y. 1992). To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide

32

adequate compensation." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (internal

quotation marks omitted). See also JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d

Cir. 1990) ("it is settled law that when an injury is compensable through money damages there is

no irreparable harm").  Injunctive relief should be granted "only on the basis of a showing that

the alleged threats of irreparable harm are not remote or speculative but are actual and

imminent." State of New York v. Nuclear Regulatory Comm'n, 550 F.2d at 755.

      While "the loss of First Amendment rights, even for brief periods" can be deemed "per se

irreparable harm," Brownell v. City of Rochester, 190 F.Supp. 472, 484 (W.D.N.Y. 2001), such

principle does not apply here.  With the exception of the handbook requirement, under the

plaintiffs' own arguments, plaintiffs' First Amendment rights will not be affected unless or until

an employee has an abortion or uses contraception, and the plaintiffs learn about it.  Only at that

time, will the statutory requirements complained of – i.e. prohibiting plaintiffs from taking

adverse actions against such an employee – be implicated.  As a result, what the plaintiffs are

seeking is a preliminary injunction to protect them in case they need it.  A preliminary injunction

is used to protect a party from actual or threatened harm; not possible harm.

      The evidence submitted by the plaintiffs in support of their motion for summary

judgment consists of declarations from (1) the President of CompassCare, Dkt. No. 17-2; (2) the

president of NIFLA, Dkt. No. 17-7; and (3) the Lead Pastor of First Bible. Dkt. No. 17-8.  These

declarations describe the functions of the plaintiffs, and their religious beliefs.  They do not

allege that any current or prospective employee has used contraception or had an abortion, or that

the plaintiffs have been at all precluded from taking any employment action against any such

employee.  In other words, nothing in the factual record demonstrates that plaintiffs are presently

precluded from taking any action against an employee because of §203-e.  Additionally, the

declarations do not identify any ways in which the plaintiffs have been precluded or limited in expressing their message or practicing their religion.

While the handbook requirement does require certain employers to take immediate action, it does not affect First Bible which, notwithstanding being in existence for over fifty years, Dkt. No. 17-8 at ¶4, does not have an employee handbook. Id. at ¶18. As such, any argument by First Bible for a preliminary injunction with respect to the handbook requirement seeks to alter, instead of maintaining, the status quo. That First Bible is in the process of working on a handbook, it is admittedly not complete. Id. at ¶19. Therefore, First Bible cannot show that it would be irreparably harmed by the handbook requirement.

Unlike First Bible, CompassCare does have an employee handbook, Dkt. No. 17-2 at ¶16, and NIFLA claims that "[m]any of [its] New York member centers maintain employee handbooks." Dkt. No. 17-7 at ¶11. Plaintiffs have failed to show that including a factual, objectively true statement of the employees' rights in their handbook will result in significant harm. The handbook requires disclosure of objective, factual and accurate information, and compelled disclosure of this type of information does not constitute irreparable harm. See e.g. CTIA – The Wireless Ass'n v. City of Berkeley, 928 F.3d 832, 837, 851 (9th Cr. 2019) (finding that compelled disclosure of "federal government's radio-frequency radiation exposure guidelines relevant to cell phone use" by cell phone providers" did not constitute irreparable harm because it was factual information).

Plaintiffs also speculatively allege that they may face decreased monetary donations, and expenses associated with defending themselves against breaches of the statute. Not only are allegations about such alleged decreased monetary donations entirely speculative, they fail to establish that plaintiffs will suffer any measurable injury, or injury of non-economic nature. JSG

Trading Corp., 917 F.2d at 79. Additionally, plaintiffs fail to articulate how or why potential donors would learn about any content of a handbook provided only to employees, including the handbook requirement. Nothing about §203-e requires the plaintiffs to say anything about employee rights under the statute on their websites, in literature, or any place or medium other than a handbook given only to employees. Therefore, plaintiffs fail to establish that speculative concerns about donations constitutes irreparable harm.

Since the plaintiffs have failed to establish that they will suffer any tangible irreparable harm if a preliminary injunction is not issued, plaintiffs' motion for preliminary injunctive relief should be denied.

## B.  **The Equities Weigh in Favor of the Defendants**

As discussed above, §203-e was enacted to protect New York workers' fundamental rights to privacy and autonomy in their reproductive health care decisions, and protect New York workers from employment discrimination based on their exercise of such rights. The issuance of a preliminary injunction in this case would serve to subject workers to discrimination by their employers and/or chill workers' exercise of their deeply-held rights to control their own body and health. These consequences, when weighed against the speculative and low possibility that the plaintiffs may encounter an employee who uses contraception and/or had an abortion, and their employer learned of such, demonstrates that the equities in favor of denying plaintiffs' motion for a preliminary injunction.

In addition, in light of the fact that it is entirely possible that none of the plaintiffs will encounter an employee during the pendency of this lawsuit who has used contraception or had an abortion, a better approach would be for a plaintiff to make a motion for preliminary injunctive relief when it is actually faced with a situation in which §203-e is implicated.

35

## CONCLUSION

For the reasons discussed above, the complaint should be dismissed in its entirety, and

plaintiffs' motion for a preliminary injunction should be denied.

Dated: Albany, New York
January 20, 2020

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants Andrew M. Cuomo,
     Letitia James and Roberta Reardon
The Capitol
Albany, New York  12224

By: *s/ Adrienne J. Kerwin*
Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 776-2608
Fax:  (518) 915-7738 (Not for service of papers)
Email: Adrienne.Kerwin@ag.ny.gov

TO:   Kenneth Connelly, Esq. (via ECF)
      David A. Cortman, Esq. (via ECF)
      Kevin Theriot, Esq. (via ECF)
      James P. Trainor, Esq. (via ECF)