UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASSCARE, a New York nonprofit corporation;
NATIONAL INSTITUTE OF FAMILY AND LIFE
ADVOCATES d/b/a NIFLA, a Virginia corporation;
FIRST BIBLE BAPTIST CHURCH, a New York nonprofit
corporation,

         *Plaintiffs*,

  -against-

ANDREW M. CUOMO, in his official capacity as the Governor of the State of New York; ROBERTA REARDON, in her official capacity as the Commissioner of the Labor Department of the State of New York; and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

         *Defendants*.

19-CV-1409

TJM/DJS

---

## MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS

        LETITIA JAMES
        Attorney General of the State of New York
        Attorney for Defendants Andrew M. Cuomo,
         Letitia James and Roberta Reardon
        The Capitol
        Albany, New York  12224

Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 776-2608
Fax:  (518) 915-7738 (Not for service of papers)       Date: February 28, 2020

# Table of Contents

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    THE COMPLAINT FAILS TO ALLEGE A COGNIZABLE CAUSE OF
        ACTION ........................................................................................................ 1

        1.        Free Exercise ................................................................................ 3

        2.        Free Speech .................................................................................. 4

        3.        Vagueness .................................................................................... 8

CONCLUSION ......................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                    **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 2

*Brush & Nib Studios, LC v. City of Phoenix*,
    448 P.3d 890 (AZ 2019) ............................................................................................ 8

*Buck v. Gordon*,
    2019 U.S. Dist. LEXIS 165196 (W.D. MI Sept. 26, 2019) ....................................... 3

*Chrysler v. Brown*,
    441 U.S. 281 (1979) .................................................................................................. 4

*Citizens Union of City of New York v. Attorney Gen. of New York*,
    269 F.Supp.3d 124 (S.D.N.Y. 2017) ......................................................................... 4

*Claybrooks v. Am. Broad. Cos., Inc.*,
    898 F.Supp.2d 986 (M.D. TN 2012) ..................................................................... 6-7

*Masterpiece Cakeshop Ltd. v. Colorado Civil Rights Com'n*,
    138 S.Ct. 1719 (2018) ............................................................................................... 3

*McDermott v. Ampersand Publishing*,
    LLC, 593 F.3d 950 (9th Cir. 2010) ........................................................................ 6-7

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S.Ct. 2361 (2018) ............................................................................................ 4-5

*National Elec. Mfrs. Ass'n v. Sorrell*,
    272 F.3d 104 ............................................................................................................. 6

*New Hope Family Services, Inc. v. Poole*,
    387 F.Supp.3d 194 (N.D.N.Y. 2019) ........................................................................ 3

*Riley v. Nat'l Fed'n of Blind*,
    487 U.S. 781 (1988), Dkt. No. 25 .......................................................................... 4-5

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
    547 U.S. 47 (2006) .................................................................................................... 7

*Rupp v. City of Buffalo*,
    2019 U.S. Dist. LEXIS 133868 (W.D.N.Y. Aug. 7, 2019) ....................................... 8

*Telescope Media Group v. Lucero*
  936 F.3d 740 (8th Cir. 2019) ................................................................................. 6-7

*Tony & Susan Alamo Foundation v. Sec. of Labor*,
  471 U.S. 290 (1985) ................................................................................................. 4

**CONSTITUTIONS**

First Amendment ................................................................................................... 1, 6, 8

**FEDERAL STATUTES**

Fair Labor Standards Act ............................................................................................. 4

**STATE STATUTES**

Labor Law
  § 203-e ............................................................................................................... passim

N.Y. Labor Law
  § 203-3(3) ............................................................................................................... 5-6

**RULES**

FRCP 12(b)(6) ............................................................................................................ 1, 3

**PRELIMINARY STATEMENT**

This memorandum of law is submitted on behalf of defendants Governor Andrew M. Cuomo, Attorney General Letitia James and New York State Department of Labor Commissioner Roberta Reardon in reply to plaintiff's opposition to defendants' motion to dismiss the complaint pursuant to FRCP 12(b)(6).

**ARGUMENT**

THE COMPLAINT FAILS TO ALLEGE
A COGNIZABLE CAUSE OF ACTION

Plaintiffs challenge Labor Law §203-e, which prohibits an employer from discriminating against an employee on the basis of the employee's or a dependent's reproductive health decision making and requires employers that utilize an employee handbook to provide notice of these statutory rights in such handbook. Plaintiffs claim that the law violates their religious, speech, and expressive association rights under the First Amendment and is constitutionally vague in violation of principles of due process.

As fully discussed in defendants' moving memorandum of law, fully incorporated herein, the complaint fails to allege a violation of plaintiffs' rights under the First Amendment or the Due Process clause.  Dkt. No. 19-1.  Defendants have clearly articulated how the allegations contained in the complaint fail to state a constitutional claim under existing case law. Specifically, the facts alleged in the complaint are insufficient to allege that Labor Law §203-e intentionally targets religion.  Id. at pp. 8-14.  Additionally, plaintiffs' claim that all of their employees – regardless of duties – are protected by the "ministerial exception" doctrine is directly contradicted by established precedent. Id. at pp. 14-16.  Further, §203-e's anti-discrimination requirements do not limit plaintiffs' ability to freely express their message, and its notice provision does not implicate the First Amendment because it compels only the disclosure

1

of purely factual information. Id. at pp. 16-22.  In addition, as a matter of law, employees' personal healthcare decisions do not burden an employer's right to freely associate. Id. at pp. 23-28. Finally, the claimed deficiencies in the specificity of §203-e alleged in the complaint fail to render the statute unconstitutionally vague.  Id. at pp. 28-31.

Notwithstanding defendants' supported arguments, plaintiffs insist that their complaint withstands a motion to dismiss because it (1) contains assertions of legal conclusions, and (2) alleges facts that the plaintiffs contend constitute constitutional violations even though settled law says otherwise.  If a complaint was required to withstand a motion to dismiss in such circumstances, a motion to dismiss would never be granted.  Plaintiffs refuse to acknowledge that the facts alleged in the complaint are simply insufficient to state a cognizable claim under any theory, or that conclusory statements of legal conclusions are sufficient to withstand a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than legal conclusions, are not entitled to the assumption of truth.").  Contrary to plaintiffs' characterization, defendants are not "recasting" the facts, see e.g. Dkt. No. 25 at p. 7, but analyzing them under settled law.  That analysis requires dismissal of the complaint in its entirety.

Perhaps most telling of plaintiffs' refusal to acknowledge long-standing, settled legal principles is plaintiffs' baffling contention that this case has "nothing to do with the right to privacy and autonomy."  Dkt. No. 25 at p. 10.  As discussed, and fully supported, in defendants' moving memorandum of law, there is no conceivably more private and personal subject matter than one's decisions about one's body and health, and no greater importance than being able to exercise one's own autonomy with respect to those decisions.  Dkt. No. 19-1 at pp. 14-15.  Those

are the decisions that §203-e was enacted to protect. Yet, plaintiffs' entire complaint alleges that the State should not interfere with plaintiffs' ability to punish and exclude people for personal decisions that they have made about the most private of subjects, without any consideration of qualifications or performance of job duties. Expressing to the court that this case "has nothing to do with" privacy and autonomy highlights not only the deficiencies in plaintiffs' reasoning, but also the propriety of dismissing the complaint in its entirety.

Plaintiffs' arguments regarding three of their claims warrant an additional response.

1. Free Exercise

As defendants' have explained, § 203-e does not target religion. Plaintiffs contrary arguments lack merit. Plaintiffs' attempt to liken the history of §203-e as alleged in the complaint to the facts in Masterpiece Cakeshop Ltd. v. Colorado Civil Rights Com'n, 138 S.Ct. 1719 (2018) and Buck v. Gordon, 2019 U.S. Dist. LEXIS 165196 (W.D. MI Sept. 26, 2019) fails. The holding in Masterpiece Cakeshop was premised on statements of religious animus by the administrative decision-making body during the adjudication of the discrimination claim at issue. 138 S.Ct. at 1729-1731. Here, the complaint points only to neutral statements by individual legislators during the legislative process leading to the ultimate passage of the bill by the entire Legislature. Dkt. No. 1 at 10-13, 149-155; 1-2 at p. 433-434. Similarly, in Buck, the Attorney General campaigned on the issue of repealing a religious exemption using religiously hostile jargon. 2019 U.S. LEXIS at **2, 33-34, 38. Nothing resembling these scenarios is alleged in the complaint. The legislative history and statements by individual legislators relied upon by plaintiffs are akin to the challenged statements in New Hope Family Services, Inc. v. Poole, 387 F.Supp.3d 194 (N.D.N.Y. 2019) (dismissing complaint on FRCP 12(b)(6) motion). They are neutral statements that describe the purpose of the bill and do not evidence any

religious hostility. Moreover, even if they fairly raised an inference of religious animus, which, as we explained, they do not, the statements in the complaint attributed to individual legislators are insufficient to infer religious animus on the part of the entire legislative body. Chrysler v. Brown, 441 U.S. 281, 311 (1979); Citizens Union of City of New York v. Attorney Gen. of New York, 269 F.Supp.3d 124, 147 (S.D.N.Y. 2017).  Accordingly, the complaint fails to allege facts raising a plausible inference that §203-e was enacted to target religion.  Since it is neutral and generally applicable, and furthers the State's interests in protecting privacy and autonomy in individual healthcare decisions, plaintiff's free exercise claim should be dismissed.

Further, §203-e is certainly not the only statute that may require employers to say or do something with which they do not agree.  For instance, in the Supreme Court decision of Tony & Susan Alamo Foundation v. Sec. of Labor, 471 U.S. 290 (1985), the plaintiff non-profit religious foundation objected to the "the minimum wage, overtime, and recordkeeping requirements of the fair Labor Standards Act." Id. at 291.  The court held that the requirements did not unconstitutionally interfere with the plaintiff's religious beliefs.  Id. at 305-306. Like the requirements of §203-e, the requirement that employers pay a minimum wage and keep appropriate records is neutral and generally applicable, and does not target religion.

2. Free Speech

Plaintiffs also fail to show that the complaint alleges facts to support a free speech claim. First, plaintiffs' reliance on Nat'l Inst. of Family & Life Advocates  v. Becerra, 138 S.Ct. 2361 (2018) ("NIFLA") and Riley v. Nat'l Fed'n of Blind, 487 U.S. 781 (1988), Dkt. No. 25 at pp. 23-24, is misplaced. The notices at issue in those cases are distinguishable from §203-e's handbook notice requirement.  These cases do not involve employee rights, or the compelled disclosure of a purely factual statement of the law applicable to plaintiffs.  Instead, they involve (1) compelled

notice by pro-life clinics of how and where to obtain alternative services, including contraception and abortion, NIFLA, 138 S.Ct. at 2369, 2371, 2376 (the notice for licensed clinics), and (2) specialized analysis required for solicitations of charitable contributions, Riley, 487 U.S. at 789.

Thus, the notice requirement in NIFLA was found to "alter the content" of petitioner's speech because it informed "women how they can obtain state-subsidized abortions—at the same time petitioners try to dissuade women from choosing that option." 138 S.Ct. at 2371. Moreover, the Court there rejected application of the lower level of scrutiny, which applies to commercial speech containing purely factual information about the terms under which services are available. The court determined that the lower standard was not applicable to the notice in NIFLA because it did not relate to services provided by the regulated entities, but rather information about state-funded services. Id. at 2372. The other notice requirement at issue in NIFLA, which required unlicensed pregnancy centers to provide notice that the facility was not a licensed medical facility, inappropriately burdened the petitioners' speech because it was not supported by any justification and was unduly burdensome—the notice had to be posted onsite in several locations and in all advertising materials in specified prominent type. Id. at 2370, 2377-78. And the Court declined to apply the more deferential standard applicable to factual information concerning commercial speech in Riley because the speech at issue involved charitable solicitations, and thus affected persuasive speech and advocacy which deserved heightened protections. 487 U.S. at 795-96. The principles discussed in NIFLA and Riley are completely inapplicable to the analysis of the handbook notice requirement, which requires only that employers inform employee of their employment rights, and provides no information, whatsoever, about whether or not to use contraception or have an abortion, or how to do so.  N.Y. Labor Law §203-3(3). The notice at issue here simply informs employees of conduct that may not legally be taken by

their employers. Id. Consequently, as we explained, "mandated disclosures of accurate, factual information" in this context does not offend core First Amendment values, and will be upheld if the notice requirement satisfies the rational basis standard, National Elec. Mfrs. Ass'n v. Sorrell, 272 F.3d 104, 114, 115, which the handbook notice does here.

Second, the notice requirement of §203-e does not express a viewpoint, and does not dictate or affect plaintiffs' ability to convey its anti-abortion/contraception message. It requires the disclosure of purely factual information. Id. In Telescope Media Group v. Lucero, relied upon by plaintiffs, the statute forced a wedding video company to create media celebrating same sex marriage, contrary to the company's religious beliefs. 936 F.3d 740 (8th Cir. 2019). Nothing about §203-e's notice provision forces the plaintiffs to "celebrate" or advocate for abortion or contraception; it simply informs employees of the law. Therefore, Telescope Media Group is inapplicable to the analysis of the notice provision at issue here.

Third, plaintiffs claim that §203-e's forced inclusion of employees who have exercised their rights to have an abortion or use contraception also affects plaintiffs' ability to convey their message. However, the plaintiffs confusingly cite to McDermott v. Ampersand Publishing, LLC, 593 F.3d 950 (9th Cir. 2010) and Claybrooks v. Am. Broad. Cos., Inc., 898 F.Supp.2d 986 (M.D. TN 2012) as support for that proposition. The employees in McDermott were newspaper reporters who endeavored to replace their employer's message with their own. McDermott, 583 F.3d at 959, 961-962. The plaintiffs in Claybrooks were not employees at all, but individuals who were not cast in a television show. Claybrooks, 898 F.Supp.2d at 989. In both cases, the courts held that the compelled hiring/retention of reporters and potential cast members necessarily dictates and frames the messages conveyed by the newspaper/television show because (1) the reporters wanted to report the news in a way contrary to that of the newspaper

6

owner, McDermott, 583 F.3d at 959, 961-962, and (2) the selection of cast members was part of the creative process for the show's content.  Claybrooks, 898 F.Supp.2d at 993, 999.   In other words, the reporters and the cast members dictated and altered the messages of the newspaper/broadcasting company.  Not only are the free speech concerns of the press and television not the same as a pregnancy clinic or a church, but there are no allegations in the complaint that an employee's **conduct**, in having an abortion or using contraception, would dictate or alter plaintiffs' message. Dkt. No. 1. As noted, §203-e does not prohibit an employer from , hiring only employees that agree to espouse the employer's message. Accordingly, the complaint fails to allege facts sufficient to state a claim that the personal healthcare decisions of an employee could alter plaintiffs' anti-abortion/contraception message.

Fourth, the complaint fails to allege facts sufficient to state a claim that §203-e, a non-discrimination statute, must "yield to the Constitution."  Telescope Media Group, 936 F.3d at 755.  Dkt. No. 25 at p. 26.  The holding in Telescope Media Group does not advance plaintiffs' position.  In Telescope Media Group, the court held that, while anti-discrimination statutes may regulate conduct, they may not prohibit the content of speech, even if that speech is contrary to the purpose of the antidiscrimination law. 936 F.3d 740 at 755.  As defendants pointed out in their moving papers, nothing about §203-e affects plaintiffs' ability to say what they want to say.  They can continue to convey their anti-abortion/contraception message verbally and in writing – to employees and otherwise; they just cannot take adverse employment actions against employees based on the employees' personal health care decisions. Thus, while the Supreme Court in Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47, 62 (2006) did not hold that an employer could be prohibited from espousing a racist belief, the Court did hold that an employer could be compelled to take down a sign reading "White Applicants Only"

because those words constituted discriminatory and unlawful conduct. Labor Law §203-e prohibits similar discriminatory conduct here.

Brush & Nib Studios, LC v. City of Phoenix, 448 P.3d 890 (AZ 2019), relied on by plaintiffs, is also distinguishable.  There, the court held that, while the anti-discrimination ordinance prohibited the wedding invitation maker from refusing to "serve all customer regardless of their sexual orientation," id. at 896, it could not require plaintiff to "create custom wedding invitations celebrating same-sex wedding ceremonies in violation of their sincerely held religious beliefs." Id. at 295.  This holding was based on a finding that plaintiff's invitations, as pieces of creative art, were a "means of personal expression" and entitled to First Amendment protection.  Id. at 909, 917.  There are no comparable allegations of creative personal expression contained in the complaint here.  Plaintiffs' citing of cases having to do with creative, artistic expression is illustrative of plaintiffs' inability to identify any cases in which the personal healthcare decisions of employees have been deemed the speech or expression of the employer. Since that is the precise nature of the free speech and association claims alleged in the complaint, such claims must be dismissed for the reasons discussed in defendants' moving papers.

3. Vagueness

Finally, plaintiffs' argument that §203-e is vague because it can be read to include "beliefs," "political speech" or "advocacy" as "reproductive healthcare decisions," Dkt. No. 25 at n. 14, 15 & p. 36, is so outlandish it hardly deserves comment.  The plain reading of the text of the statute, and its legislative history, make clear that the employee conduct protected by §203-e are personal **healthcare decisions**; not one's beliefs – political or otherwise -- about healthcare decisions. Dkt. Nos. 1-4 at p. 5 & 1-5 at p. 6.  Rupp v. City of Buffalo, 2019 U.S. Dist. LEXIS 133868, 34 (W.D.N.Y. Aug. 7, 2019) ( a "'statute which employs terms having an accepted

8

meaning 'long recognized in law and life' cannot be said to be so vague and indefinite as to afford the [party] insufficient notice of what is prohibited or inadequate guidelines for adjudication…'").  Accordingly, this argument should be rejected.

## CONCLUSION

For the reasons discussed above, the complaint should be dismissed in its entirety, and plaintiffs' motion for a preliminary injunction should be denied.


Dated: Albany, New York
       February 28, 2020

       LETITIA JAMES
       Attorney General of the State of New York
       Attorney for Defendants Andrew M. Cuomo,
           Letitia James and Roberta Reardon
       The Capitol
       Albany, New York  12224

By: *s/ Adrienne J. Kerwin*
Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 776-2608
Fax:  (518) 915-7738 (Not for service of papers)
Email: Adrienne.Kerwin@ag.ny.gov

TO:    Kenneth Connelly, Esq. (via ECF)
         David A. Cortman, Esq. (via ECF)
         Kevin Theriot, Esq. (via ECF)
         James P. Trainor, Esq. (via ECF)