**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

COMPASSCARE, a New York nonprofit
corporation; NATIONAL INSTITUTE OF
FAMILY AND LIFE ADVOCATES d/b/a
NIFLA, a Virginia corporation; FIRST BIBLE
BAPTIST CHURCH, a New York nonprofit
corporation,

                           Plaintiffs,

     vs.

ANDREW M. CUOMO, in his official capacity as
the Governor of the State of New York; ROBERTA
REARDON, in her official capacity as the
Department of Labor Commissioner of the State of
New York; LETITIA JAMES, in her official
capacity as the Attorney General of the State of New
York,

                           Defendants.

1:19-cv-01409 (TJM/DJS)

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Authorities..................................................................................................................ii

Introduction...........................................................................................................................1

Factual and Procedural Background .......................................................................................2

Argument ..............................................................................................................................4

I.     Legal Standards .........................................................................................................4

       A.     Summary Judgment ........................................................................................4

       B.     Permanent Injunction .....................................................................................4

       C.     The Law of Compelled Speech .......................................................................5

              1.     Plaintiffs' speech—including the employment standards and
                     expectations laid out in their employee handbooks—receives full First
                     Amendment protection..........................................................................5

              2.     The United States Constitution safeguards the right to be free from
                     compelled speech and requires laws compelling speech to overcome
                     strict scrutiny if they are to survive. ....................................................6

II.    Section 203-e compels speech. .................................................................................7

III.   By compelling speech Plaintiffs would not otherwise utter, Section 203-e interferes
       with Plaintiffs' freedom of mind, restricts Plaintiffs' ability to speak their pro-life
       message, and damages their ability to accomplish their pro-life missions. ................8

IV.    The Supreme Court's *NIFLA* decision and the Second Circuit's *New Hope* decision
       doom Section 203-e's employee handbook notice provision. ...................................10

       A.     *NIFLA*.........................................................................................................10

       B.     *New Hope* ...................................................................................................11

V.     Section 203-e cannot satisfy strict scrutiny.............................................................13

       A.     The State can show no compelling interest. ...................................................14

       B.     Section 203-e is not narrowly tailored. .........................................................14

VI.    Plaintiffs merit a permanent injunction. ..................................................................15

Conclusion ..........................................................................................................................16

## TABLE OF AUTHORITIES

### Cases

*Agency for International Development v. Alliance for Open Society International, Inc.,*
   133 S. Ct. 2321 (2013)..................................................................................................... 6, 12

*Amoco Production Compant v. Village of Gambell,*
   480 U.S. 531 (1987) .............................................................................................................5

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .............................................................................................................4

*Ashcroft v. Free Speech Coalition,*
   535 U.S. 234 (2002) .............................................................................................................8

*Brown v. Entertainment Merchants Association,*
   564 U.S. 786 (2011) .............................................................................................................7

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014)............................................................................................................15

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993)............................................................................................................13

*City of Boerne v. Flores,*
   521 U.S. 507 (1997)............................................................................................................13

*Connecticut Department of Environmental Protection v. O.S.H.A.,*
   356 F.3d 226 (2d Cir. 2004) ........................................................................................ 5, 16

*Connick v. Myers,*
   461 U.S. 138 (1983) .............................................................................................................5

*Consolidated Edison Company of New York, Inc. v. Public Service Commission of New York,*
   447 U.S. 530 (1980)............................................................................................................13

*eBay Inc. v. MercExchange, L.L.C.,*
   547 U.S. 388 (2006) ...................................................................................................... 4, 16

*Frisby v. Schultz,*
   487 U.S. 474 (1988)............................................................................................................15

*Hurley v. Irish–American Gay, Lesbian & Bisexual Group of Boston,*
   515 U.S. 557 (1995)...................................................................................................... 6, 8, 9

*Marriott v. County of Montgomery,*
   426 F. Supp. 2d 1 (N.D.N.Y. 2006)............................................................................. 5, 16

*Matsushita Electrical Industries Co. v. Zenith Radio Corporation,*
   475 U.S. 574 (1986) .............................................................................................................4

*McCullen v. Coakley,*
   134 S. Ct. 2518 (2014).........................................................................................................6

*Miami Herald Publishing Company v. Tornillo*,
    418 U.S. 241 (1974) ............................................................................................9

*National Institute of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ..........................................................................1, 6, 9, 10

*New Hope Family Services, Inc. v. Poole*,
    966 F.3d 145 (2d Cir. 2020) ........................................................2, 10, 11, 12

*New Hope Family Services, Inc. v. Poole*,
    493 F. Supp. 3d 44 (N.D.N.Y. 2020) .......................................................2, 12

*New York Civil Liberties Union v. New York City Transit Authority*,
    684 F.3d 286 (2d Cir. 2012) ..............................................................................4

*New York Progress & Protection PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) ............................................................................16

*Powell v. National Board of Medical Examiners*,
    364 F.3d 79 (2d Cir. 2004) ................................................................................4

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ............................................................................................7

*Reed v. Town of Gilbert, Arizona*,
    576 U.S. 155 (2015) ............................................................................................7

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
    487 U.S. 781 (1988) ..................................................................................6, 9, 15

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ............................................................................................6

*Sable Communications of California, Inc. v. Federal Communications Commission*,
    492 U.S. 115 (1989) ..........................................................................................13

*Secretary of State of Maryland v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) ............................................................................................6

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................................9

*Turner Broadcasting Systems Inc. v. Federal Communications Comission*,
    512 U.S. 622 (1994) ...................................................................................13, 14

*United States v. Playboy Enertainment Group, Inc.*,
    529 U.S. 803 (2000) ...........................................................................13, 14, 15

*Village of Schaumburg v. Citizens for a Better Environment*,
    444 U.S. 620 (1980) ............................................................................................8

*West Virginia State Board of Education v. Barnette*,
    319 U.S. 624 (1943) ............................................................................................8

*Wooley v. Maynard*,
   430 U.S. 705 (1977) ............................................................................................... 6, 8

**Statutes**

N.Y. LABOR LAW § 203-e ..............................................................................................*passim*

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................4

# INTRODUCTION

In late 2019, the New York State legislature passed the so-called "Boss Bill." *See* N.Y. LABOR LAW § 203-e ("Section 203-e"); ECF No. 1, Verified Complaint ("VC"), ¶¶ 1-9. Section 203-e purports to combat employer discrimination based on the reproductive health decisions of employees, but it is a politicized remedy in search of a nonexistent problem. The legislative record reveals not a single instance of reproductive health employment discrimination, much less one which permits the State to restrict the constitutional rights of pro-life employers like Plaintiffs.

Section 203-e threatens the effectiveness and vitality of Plaintiffs' mission to protect and defend life by requiring them to hire and retain those who believe and act contrary to their religious and pro-life beliefs. Plaintiffs' nature and reason for being requires them to seek and obtain compliance from their employees on issues related to abortion and abortifacient drugs, not only in the workplace but in their employees' personal lives as well. Anything less compromises Plaintiffs' mission because it requires them to employ active dissenters from the worldview they seek to communicate to clients and the world at large. Yet Section 203-e compels Plaintiffs to employ—upon pain of costly litigation and even criminal sanctions—those who insist on having abortions and using abortifacient drugs, the very things Plaintiffs are trying to combat in their work.

Only one aspect of this case is at issue here—Plaintiffs' compelled speech claim implicating Section 203-e's employee handbook notice provision. Relying on *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) ("NIFLA"), this Court concluded that the notice provision was likely unconstitutional and granted Plaintiffs a preliminary injunction. Decision and Order at 42-50, 66, ECF No. 27. Nothing warrants a change of course. Discovery has only highlighted the statute's infirmities. The record confirms, for instance, that the statute forces Plaintiffs to say what they would not, at the cost of damaging their ability to accomplish their pro-life missions. Plaintiffs' Statement of Facts ("Pls.' SOF") ¶¶ 25-29, 37-40. It confirms that the statute is justified by no compelling interest. *Id.* at ¶¶ 30-34. And it confirms that the State tried no alternative measures to communicate Section 203-e's contents to employees before resorting to compelling speech. *Id.* at ¶ 36.

Further, since this Court granted a preliminary injunction, the Second Circuit and a court in this district (on remand) found a similar compelled speech requirement likely unconstitutional in *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145 (2d Cir. 2020), and *New Hope Fam. Servs., Inc. v. Poole*, 493 F. Supp. 3d 44 (N.D.N.Y. 2020), respectively. Thus, new controlling precedent supports a finding that the State cannot tell Plaintiffs what "they must say." *Id.* at 61.

Plaintiffs are entitled to a grant of summary judgment and a permanent injunction on their compelled speech claim.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Section 203-e was passed by the New York State Legislature on January 22, 2019, and signed into law by Governor Andrew Cuomo on November 8, 2019. VC ¶ 1. The statute's legislative history reveals not one instance of employer discrimination based on the reproductive health choices of any employee in the state, and even after discovery Defendants have not shown that any reproductive discrimination ever happened in New York. Pls.' SOF ¶¶ 33-34; VC ¶¶ 8, 150-55. Nor is there any evidence suggesting the State attempted to inform employees of the statute's provisions before it compelled employer speech through the employee handbook notice provision. Pls.' SOF ¶ 36.

Section 203-e provides, among other things, that "[a]n employer shall not . . . discriminate nor take any retaliatory personnel action against an employee . . . because of or on the basis of the employee's or dependent's reproductive health decision making . . . ." §203-e(2)(a). It further provides that "[a]n employer shall not . . . require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions." §203-e(2)(b). Finally, it says "[a]n employer that provides an employee handbook to its employees must include in the handbook notice of employee rights and remedies under this section." §203-e(6).

---

[1] This Court already knows the factual background from the briefs filed by the parties and its Decision and Order resolving them, so Plaintiffs do not include every conceivable fact about Section 203-e's genesis, passage, and impact on Plaintiffs—only those most pertinent to resolving the present motion. Plaintiffs incorporate by reference their Verified Complaint (ECF No. 1) and their briefing in support of their Motion for Preliminary Injunction and in Opposition to Defendants' Motion to Dismiss, along with the materials accompanying those filings (ECF Nos. 17-1-17-8; 25).

Failure to abide by Section 203-e exposes Plaintiffs and other pro-life organizations to criminal penalties, along with private suits by their employees. Pls.' SOF ¶¶ 26-29. Section 203-e also permits courts to impose damages and award attorneys' fees, and empowers them to order the reinstatement of employees who dissent from organizational beliefs and behaviors. *Id.*

Plaintiffs, however, require employees to stand as living exemplars of the pro-life cause to accomplish their pro-life work. Pls.' SOF ¶¶ 5-6, 14, 20. One of the ways in which Plaintiffs like CompassCare and many of NIFLA's member centers communicate their beliefs and expectations to employees is to maintain an employee handbook containing mandatory policies. Pls.' SOF ¶¶ 8, 15-16, 38. Section 203-e thwarts Plaintiffs' employment goals and organizational purposes because it rewards and protects dissenting employees who detract from the organizations' pro-life mission.

Faced with Section 203-e's restrictions on their freedom to operate according to their consciences, Plaintiffs—a pro-life pregnancy center, a national pro-life pregnancy resource organization representing 41-member pregnancy centers in the New York State, and a Christian Church—sued in November 2019. Plaintiffs brought claims for the First Amendment right to expressive association, free exercise, religious autonomy, and free speech. ECF No. 1. They moved for a preliminary injunction seeking relief on all claims. ECF No. 17-1-17-8 Defendants responded by moving to dismiss. ECF No. 19.

On June 5, 2020, this Court dismissed the majority of Plaintiffs' claims for failure to state a claim, but preliminarily enjoined the employee handbook notice provision. ECF No. 27 at 66-67. This Court held that the employee handbook notice provision compelled speech and was required to pass strict scrutiny to survive a free speech challenge. *Id.* at 47. This Court found that Defendants advanced a compelling interest—the protection of employees' right to be free from discrimination because of their reproductive health care choices—but failed the narrow tailoring requirement because "[t]he notice requirement is not the least restrictive means available to inform Plaintiffs' employees of their rights under Section 203-e." *Id.* at 49.

Following this Court's Decision and Order the parties engaged in a limited period of discovery restricted to the employee handbook provision. *See* ECF No. 38. Discovery revealed no fact which

would require this Court to reverse its course as to its original ruling on the employee handbook notice provision. That provision still compels speech and was imposed before the State tried any less restrictive alternatives. It cannot survive strict scrutiny.

## ARGUMENT

### I.   Legal Standards

#### A.  Summary Judgment

Summary judgment is warranted where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56A fact is not material unless it amounts to "evidence [to support] a reasonable jury [in] return[ing] a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a "metaphysical doubt as to the material facts" will not forestall summary judgment, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once a movant establishes that there is no genuine issue of material fact, the nonmovant bears the burden of demonstrating "specific facts showing that there is a genuine issue for trial." *Powell v. National Board of Medical Examiners*, 364 F.3d 79, 84 (2d Cir. 2004).

There is no genuine issue of material fact here. The sole question remaining is a purely legal one—whether Section 203-e's compelled employee handbook notice requirement can survive strict scrutiny.

#### B.  Permanent Injunction

A permanent injunction should issue when the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "The requirements for a permanent injunction are 'essentially the same' as for a preliminary injunction, except that the moving party must demonstrate 'actual success' on the merits. *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S.

531, 546 n. 12 (1987)). The "alleged violation of a constitutional right triggers a finding of irreparable injury," *Conn. Dep't of Env't Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004), and succeeding on a motion for summary judgment constitutes "actual success on the merits of [a] claim," *Marriott v. Cnty. of Montgomery*, 426 F. Supp. 2d 1, 11 (N.D.N.Y. 2006) (concluding that plaintiffs had demonstrated entitlement to permanent injunction after showing prison strip search policy violated the Fourth Amendment).

For the reasons supporting its earlier preliminary injunction, this Court should, in addition to granting Plaintiffs' motion for summary judgment, issue a permanent injunction in favor of Plaintiffs on their employee handbook notice claim.

### C. The Law of Compelled Speech

#### 1. Plaintiffs' speech—including the employment standards and expectations laid out in their employee handbooks—receives full First Amendment protection.

Plaintiffs operate mission-oriented organizations rooted in their religious and pro-life beliefs. Everything they do—from counseling pregnant women, to providing medical and nonmedical services to clients, to publicly speaking out to protect the rights of the unborn, to communicating employment standards and expectations to their employees—is aimed at achieving an abortion-free culture. To accomplish their mission, Plaintiffs must hire, train, and retain only those who believe in that mission. So Plaintiffs speak to and train their employees through their employee handbooks. These handbooks are the blueprints Plaintiffs use to create a strong organizational foundation so that they might more effectively help women decide to bring their babies to term and convince society to move toward a world in which abortion is never seen as necessary. Communicating these employment standards necessarily requires speech on issues of the utmost public importance—abortion and its religious, sociological, and health implications. This is the very type of speech which "occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (cleaned up). In fact, the Supreme Court has recognized that nonprofits like Plaintiffs often engage in the "dissemination of information, discussion, and advocacy of public issues," which it deems "an activity clearly protected by the First Amendment." *Sec'y of State*

*of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 961 (1984). The Court has also determined that the First Amendment protects an organization's ability to advocate for viewpoints in accordance with its mission, free from government interference with that expression. *See Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321, 2328 (2013). Plaintiffs' speech—even speech to their employees— rests at the core of First Amendment. *See, e.g., McCullen v. Coakley*, 134 S. Ct. 2518, 2536 (2014) (abortion-related leafletting and advocacy are protected); *Rust v. Sullivan*, 500 U.S. 173, 196 (1991) (discussing the "constitutional right … to engage in abortion advocacy and counseling").

> **2. The United States Constitution safeguards the right to be free from compelled speech and requires laws compelling speech to overcome strict scrutiny if they are to survive.**

Compelled speech is antithetical to the First Amendment, which "presume[s] that speakers, not the government, know best both what they want to say and how to say it.*" Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 790-791 (1988). The First Amendment protects "the right to speak freely and the right to refrain from speaking at all," *Wooley v. Maynard*, 430 U.S. 705, 714 (1977), and the right to choose what to say and "what not to say," *Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995) (quotation marks and citation omitted). A compelled disclosure of "fact" is no more acceptable than a compelled disclosure of opinion— "either form of compulsion burdens protected speech." *Riley*, 487 U.S. at 797–98. The "general rule[ ] that the speaker has the right to tailor the speech[ ] applies . . . equally to statements of fact the speaker would rather avoid." *Hurley*, 515 U.S. at 573. Thus, laws compelling speech routinely trigger strict scrutiny, even those that compel only the expression of facts. *See Riley*, 487 U.S. at 791–92, 797-801 (citing cases and applying strict scrutiny to compelled factual disclosures).

Further, "[m]andating speech that a speaker would not otherwise make necessarily alters the content" and constitutes "a content-based regulation of speech." *Riley*, 487 U.S. at 795; *NIFLA*, 138 S. Ct. at 2371 (same). Likewise, "when a state compels an individual to speak a particular message, the state alter[s] the content of [their] speech, and engages in content-based regulation." *NIFLA*, 138 S. Ct. at 2371 (cleaned up). Content-based speech regulations are presumptively unconstitutional. *Brown*

*v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165 (2015) (internal quotation omitted).[2]

## II.     Section 203-e compels speech.

As this Court found in granting Plaintiffs a preliminary injunction, Section 203-e "compels [Plaintiffs] to use language they otherwise would not." ECF No. 27 at 47. Section 203-e requires "[a]n employer that provides an employee handbook to its employees [to] include in the handbook [a] notice of employee rights and remedies . . . ." NY Labor L. § 203-e(6). This Court already found that Section 203-e "[p]resumably" requires Plaintiffs to communicate to their employees the full panoply of the statute's protections, including "the statute's prohibition on discrimination or retaliation because of . . . reproductive health[ ] decision making," "the statute's protection against an employer-mandated waiver of the employee's right to make their own reproductive health-care decisions," and the statute's remedies, "including the employee's right to bring a civil action against 'an employer alleged to have violated [its] provisions.'" ECF No. 27 at 44. Put another way, Section 203-e requires Plaintiffs—pro-life employers opposed to abortion and abortifacient drugs—to give to their employees a notice containing "language that the [Plaintiffs] would otherwise not use," language that "could be interpreted to inform employees that their employer's views on . . . issues [of reproductive health decision making] are contradicted by the State's views." *Id.* at 44, 49.  This notice necessarily alters the content of what Plaintiffs themselves wish to communicate to their employees, clients, and the broader community, because it requires them to publish a notice concerning abortion that contradicts their organizational message.

By compelling Plaintiffs to say what they would not, the notice constitutes a content-based regulation of speech calling for strict scrutiny. ECF No. 27 at 44-50; *see Reed*, 576 U.S. at 2228 (law

---

[2] In granting Plaintiffs a preliminary injunction in its June 5, 2020 Decision and Order, this Court held that Section 203-e "compels [Plaintiffs] to use language they otherwise would not" and was therefore subject to—but failed—strict scrutiny. ECF No. 27 at 46-49.

content-based on its face is subject to strict scrutiny). No record evidence casts doubt on this Court's earlier conclusion that, because Section 203-e "alter[s] the content of [Plaintiffs'] speech," ECF No. 27 at 45, it must (but cannot) survive strict scrutiny.[3]

**III.    By compelling speech Plaintiffs would not otherwise utter, Section 203-e interferes with Plaintiffs' freedom of mind, restricts Plaintiffs' ability to speak their pro-life message, and damages their ability to accomplish their pro-life missions.**

The constitutional prohibition on compelled speech is rooted in the fundamental value of freedom of thought and mind. This includes both the "dissemination and propagation of views and ideas," *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980), and private internal thought. "The right to think is the beginning of freedom," *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002), and the "right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind,'" *Wooley*, 430 U.S. at 714 (citing *W. Va. State Bd. or Educ. v. Barnette*, 319 U.S. 624, 637 (1943)).  Imposing 203-e's notice requirement impedes Plaintiffs' pro-life work on three fronts.

First, the notice requirement intrudes upon Plaintiff's freedom of mind. They seek to cultivate unanimity of belief and action with respect to issues regarding abortion and contraception. Employees must work and live the mission at all times. Pls.' SOF ¶¶ 5-6, 8, 14, 16, 38. But Section 203-e requires Plaintiffs to tell their employees that they can have abortions, use abortifacient drugs, and ignore traditional Christian teachings on sexual morality without any employment consequences. The State replaces Plaintiffs' own worldview with the secular orthodoxy crafted by the Legislature. Plaintiffs' employee handbooks are their blueprints for ensuring their employees are properly oriented and fully on-board with their respective organizational missions and beliefs. But Section 203-e creates for Plaintiffs a new blueprint, one they do not wish to use as their missional template. Plaintiffs are forced by the statute to believe one thing and say another. This intrusion is constitutionally intolerable. *See Hurley*, 515 U.S. at 576 (stating that "when dissemination of a view contrary to one's own is forced

---

[3] Defendants admitted that Section 203-e applies to all employers in the state and confirmed that no religious exemptions exist, even for those employers for whom the notice provision constitutes an impediment to their reason for being. *See* Pls.' SOF ¶ 29.

upon a speaker intimately connected with the communication advanced, the speaker's right to autonomy over the message is compromised," and rejecting idea that government can "require speakers to affirm in one breath that which they deny in the next") (cleaned up).

Second, the notice requirement dilutes and compromises Plaintiffs' ability to speak their own pro-life message, whether to employees, clients, or the broader community. Pls.' SOF ¶¶ 37-38. The Supreme Court routinely strikes down compelled speech requirements which water down a speaker's own unique message or those that force speakers to include the speech of others in their own communications. *See, e.g.*, *Hurley*, 515 U.S. at 574-75 (striking down law requiring parade organizers to include certain groups in their parade); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (striking down law forcing newspapers to print political columns); *Pac. Gas & Elec. Co.*, 475 U.S. at 20–21 (plurality opinion) (prohibiting state from forcing companies to include third-party newsletters in their billing envelopes). The compulsion of factual speech against the speaker's will is just as egregious as prohibiting speech based on disagreement with the speaker's message. *Riley*, 487 U.S. at 795–800 (rejecting requirement that professional fundraisers announce to potential donors the percentage of funds raised that have been given to charities); *NIFLA*, 138 S. Ct. at 2371 (2018) (treating state-scripted abortion disclosure notice imposed on pro-life pregnancy centers as presumptively unconstitutional and ultimately striking it down); cf. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 574 (2011) (rejecting as "impermissible" a speech regulation where "the State's goal [is] burdening disfavored speech by disfavored speakers").

Third, and finally, the notice requirement cripples Plaintiffs' ability to accomplish their pro-life mission. Plaintiffs' work in the community is carried out by their people, and it is essential that they be able to hire to that unique mission. That also requires, however, that they be able to not hire— or be able to discipline—those employees who would compromise their work. Pls.' SOF ¶¶ 5-6, 8, 14, 16, 38-39. Section 203-e directly interferes with Plaintiffs by making them speak a message not only that they disagree with, but one which contradicts their core religious beliefs. The employee handbook notice requirement tells employees that their reproductive health choices do not matter to Plaintiffs' work. That message is exactly the opposite of what Plaintiffs want and need to communicate

to their employees. This unwarranted intrusion into Plaintiffs' affairs is doomed not only by the Supreme Court's decision in *NIFLA*, but also by the Second Circuit's recent decision in *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145 (2d Cir. 2020), which was decided after this Court's June 5, 2020 Decision and Order.

**IV.    The Supreme Court's *NIFLA* decision and the Second Circuit's *New Hope* decision doom Section 203-e's employee handbook notice provision.**

**A.    *NIFLA***

In *NIFLA*, the Supreme Court rejected California's attempt to force pro-life pregnancy centers to recite a state-scripted abortion disclosure. The Court held that the notice requirement served as "a content-based regulation of speech" because it "compell[ed] individuals to speak a particular message." 138 S. Ct. at 2371. The attempt "plainly alter[ed] the contents of [the centers'] speech," and did so as to abortion, "the very practice that [the centers] are devoted to opposing." *Id.* (cleaned up).

As this Court has already concluded, Section 203-e involves a "similar" notice requirement. ECF No. 27 at 45. Section 203-e compels Plaintiffs and other pro-life organizations to tell their employees that Plaintiffs' codes of conduct and statements of faith need not be followed, and that the employees' reproductive health decisions will not affect their employment status. Pls.' SOF ¶¶ 38-39. The notice provision operates as "a content-based regulation of speech," "compelling Plaintiffs "to speak a particular message." *NIFLA*, 138 S. Ct. at 2371. Moreover, Section 203-e alters the content of, and in fact contradicts, Plaintiffs' speech about abortion and abortifacient drugs, both of which Plaintiffs exist to oppose. Accordingly, as this Court found in granting Plaintiffs a preliminary injunction, *NIFLA* is "analogous," and strict scrutiny applies. ECF No. 27 at 45-50. That same logic now commands a grant of summary judgment and permanent injunction for Plaintiffs on Section 203-e's notice provision.

Defendants may argue *NIFLA* is distinguishable because it involved a state-drafted script and Section 203-e's notice provision does not. But this Court already rejected that argument and concluded that the required content of the notice is readily apparent. Plaintiffs must communicate what the law entails to their employees, even though such a communication involves "language that the Plaintiffs

10

would otherwise not use." ECF No. 27 at 46. Precisely scripted message or not, Section 203-e's notice requirement compels unwanted speech and regulates speech based on content. It is subject to strict scrutiny under *NIFLA*, *id.* at 47, as well as the Supreme Court's other seminal compelled speech cases. *See supra* at 5-7.

And it is immaterial that the compelled disclosure in *NIFLA* pertained to clients, while Section 203-e's notice is directed at employees. Both requirements compel unwanted speech the respective plaintiffs do not want to utter, both are antithetical to their reason for being, and both impede their ability to accomplish their pro-life missions. Plaintiffs' employees act as pro-life messengers to their clients, and Plaintiffs must be able to trust those employees to both speak *and* comply with Plaintiffs' pro-life worldview. *See* Pls.' SOF ¶¶ 38-39. It is no comfort to Plaintiffs that they *only* need to speak against their beliefs to their employees and not directly to their clients, especially when this Court has already recognized that "the notice [requirement] could be interpreted to inform employees that their employer's views on these issues are contradicted by the State's views." ECF No. 27 at 49. The compelled speech doctrine exists to protect organizations like Plaintiffs from such government overreach.

## B. *New Hope*

The Second Circuit's controlling decision in *New Hope* is equally fatal to the survival of Section 203-e's notice provision.

In *New Hope*, the Second Circuit confronted a regulation promulgated by the New York Office of Children and Family Services ("OCFS") which prohibited adoption agencies from discriminating based on sexual orientation and marital status. OCFS required New Hope to "either . . . change its policy to conform to the regulation or close its adoption operation." 966 F.3d at 149. New Hope, a Christian adoption agency, sued under the Free Speech, Free Exercise, and Equal Protection Clauses, because its religious beliefs preclude it from "recommend[ing] adoption by unmarried or same-sex couples" and agreeing "such placements are in the best interests of a child." *Id.*

The Second Circuit reversed the district court's dismissal of New Hope's free exercise and free speech claims, including its compelled speech claim. *Id.* at 170-78. In so doing, the court held that

"when government 'direct[ly] regulat[es] ... speech' by mandating that persons explicitly agree with government policy on a particular matter, it 'plainly violate[s] the First Amendment.'" *Id.* at 170 (quoting *Agency for Int'l Dev.*, 133 S. Ct. at 213.). Crucially, the Second Circuit recognized that "all New Hope's adoption services—from counseling birthmothers, to instructing and evaluating prospective adoptive parents, to filing its ultimate reports with the court—are laden with speech." *Id.* at 171. All those "services are provided so that, at their end, New Hope itself can *speak* on the determinative question for any adoption: whether it would be in the best interests of a child to be adopted by particular applicants." *Id.* (emphasis in original).

Based on these facts, the Second Circuit concluded that New Hope stated a compelled speech claim. OCFS required New Hope to speak a message with which it disagreed, and one which violated its religious beliefs, "by compelling it to recommend same-sex couples or unmarried couples as adoptive parents." *Id.* The Second Circuit rejected the State's argument that its regulation did not compel speech because New Hope was still free "to share its religious beliefs throughout the entire [adoption process]." *Id.* at 175. Rather, the court found that "New Hope [could] not both comply with [the regulation] . . . and express its view that adoption by unmarried and same-sex couples is not in the best interests of a child." *Id.* at 176.

On remand, the district court agreed, holding that "by attempting to force New Hope to say that it is in a child's best interests to be placed with an unmarried or same sex couple, despite New Hope's sincere disagreement with that statement, OCFS is attempting to compel speech." *New Hope*, 493 F.Supp.3d at 62. The district court then found that, by presenting New Hope with an ultimatum rather than agreeing to a "recusal-and-referral approach," the agency failed narrow tailoring, entitling New Hope to a preliminary injunction on its compelled speech claim. *Id.* at 63.

*New Hope*, like *NIFLA*, dooms Section 203-e's notice provision. As with New Hope, everything Plaintiffs do—from counseling and providing medical and nonmedical services to clients, to training their employees to accomplish this mission—is not only "laden with speech," but also designed so that Plaintiffs can speak in the world as effective pro-life witnesses. *See* Pls.' SOF ¶¶ 7, 10, 18. Plaintiffs' ability to train their employees to their mission and to enforce their expectations as to

Christian belief and behavior absent state interference—especially on issues of reproductive decision making—is essential to their remaining viable pro-life voices in their communities. Section 203-e's notice provision jeopardizes that voice by imposing its own type of ultimatum—either dilute your pro-life witness by hiring and retaining active dissenters, or subject yourselves to potentially crippling private lawsuits, state enforcement actions, exorbitant damages awards, and criminal penalties. Under *New Hope*, this is not a constitutionally permissible choice. Along with *NIFLA*, *New Hope* provides controlling authority for permanently enjoining Section 203-e's notice provision.

V.      **Section 203-e cannot satisfy strict scrutiny.**

Strict scrutiny is the "most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). For the State to meet its burden, it must show that Section 203-e serves interests "of the highest order," *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993), and is "narrowly tailored" to serve those paramount interests. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). To establish a compelling interest, a state "must do more than simply posit the existence of the disease sought to be cured": it "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (internal quotations and citations omitted). The state, that is, must "present more than anecdote and supposition," and must show an "actual problem" to be solved. *Playboy Entm't Grp., Inc.*, 529 U.S. at 822. "Mere speculation of harm does not constitute a compelling state interest," *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 543 (1980), and "[c]onclusory statements [by] proponents of" a law also will not do." *Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 129–30 (1989). In light of these controlling parameters, Section 203-e fails.

### A.  The State can show no compelling interest.[4]

Section 203-e's legislative history reveals no actual problem which needs solving, much less a compelling interest to justify its speech compulsion. *See* VC ¶¶ 8-9; 148-150. The main Assembly sponsor, even upon direct questioning, could not cite to a single instance of employment discrimination based on reproductive health decision-making ever taking place in the State. VC ¶¶ 153-54. And the Assembly's and the Senate's official justifications for the statute could only muster a generic interest in combatting discrimination. VC Ex. 4 (N.Y. State Assembly Bill A584 Bill Summary, A00584 Memo), ECF No. 1. Any compelling interest is further undermined by the fact that the State requires only those employers who have employee handbooks to give notice of the law's contents. If the interest is as strong as Defendants suggest, the requisite notice would be universal and nonnegotiable. Connelly Aff., Ex. C (Defs.' Resp. to Pls.' Req. for Admis.) at ¶ 12  (admitting that the statute's notice provision requires only those employers with employee handbooks to give information about the law to their employees). Discovery revealed no compelling interests either. Connelly Aff., Ex. B (Defs.' Resp. to Pls.' Interrog.) at ¶ 9 (proffering generic interest in "prohibiting employment discrimination," but failing to show an actual problem to justify law).

To establish a compelling interest, the State was required to "demonstrate that [its] recited harms are real, not merely conjectural." *Turner Broad. Sys., Inc.*, 512 U.S. at 664. Anecdote and supposition are insufficient. *Playboy Entm't Grp., Inc.*, 529 U.S. at 822. Yet supposition is all the State has mustered here—it has imagined a harm in order to create an unnecessary but politically popular "cure." *See* Pls.' SOF ¶¶ 33-34. Because the State lacked a compelling interest in passing Section 203-e, the employee handbook notice provision is unconstitutional.

### B.  Section 203-e is not narrowly tailored.

This Court already found in its June 5, 2020 Decision and Order that the State failed its narrow tailoring obligation, and no record fact or development changes that conclusion. ECF No. 27 at 48-

---

[4] Plaintiffs realize that this Court found that Section 203-e served a compelling interest, ECF No. 27 at 47, but include this discussion here on summary judgment to preserve the issue on appeal, should one prove necessary.

50. The record instead continues to show that Defendants tried no less restrictive means to broadcast the contents of Section 203-e to employees before compelling Plaintiffs' speech. *See* Pls.' SOF ¶ 36. The record also shows that, even though the State knew that Section 203-e would directly conflict with religious and pro-life employers' beliefs and put them to intolerable choices, it refused to exempt Plaintiffs and other like-organizations from the statute's reach. *See* Pls.' SOF ¶ 35 (showing the legislature knew of the problems posed to religious organizations by the statute but took no action); VC ¶¶ 15-16.[5]

To be narrowly tailored, Section 203-e must "target[ ] and eliminate[ ] no more than the exact source of the evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (internal citations omitted); *Playboy Entm't Grp., Inc.*, 529 U.S. at 813 (state bears burden of showing no less restrictive alternatives exist to further its alleged interests). First, there was never any "evil" crying out for a remedy to begin with, so even the most precise tailoring would not be remedial. Second, in the free-speech context, "[b]road prophylactic rules . . . are suspect," and "[p]recision of regulation must be the touchstone." *Riley*, 487 U.S. at 801. Yet Section 203-e compels speech as a first resort, and offends the free speech rights of even those organizations like Plaintiffs who cannot both pursue their mission and comply with the statute's requirements. The Constitution does not permit this clumsiness. Third, and finally, where a state has other means "at its disposal" that are "less restrictive" but fails to take them, it will not pass the "exceptionally demanding" least restrictive means test. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728-730 (2014). Here, as this Court already recognized, Defendants could have "inform[ed] employees of their rights by other means that did not interfere with the message Plaintiffs aim at their employees." ECF No. 27 at 49. Defendants' failure in this regard means Section 203-e is not narrowly tailored and therefore unconstitutional.

**VI.    Plaintiffs merit a permanent injunction.**

Because Plaintiffs have shown that Section 203-e's employee handbook notice requirement

---

[5] The State knew how to provide religious exemptions, and previously did so in other contexts. *See* ECF No. 17-1 at 5-6 & n. 2 (giving example of religious exemption provided by the legislature in New York's Human Rights Law).

unconstitutionally compels their speech, they are entitled to summary judgment on this claim. And under *eBay Inc.*, they are entitled to a permanent injunction against Section 203-e. *See* 547 U.S. at 391. Given that Section 203-e compels Plaintiffs' speech in violation of the Free Speech Clause, the "irreparable injury" and the "actual success on the merits" factors of the permanent injunction analysis are satisfied. *See Conn. Dep't of Env't Prot.*, 356 F.3d at 231 ("alleged violation of a constitutional right triggers a finding of irreparable injury"); *Marriott*, 426 F. Supp.at 11 (success on a motion for summary judgment constitutes "actual success on the merits of [a] claim"). Nor is there any question that monetary damages are wholly inadequate to compensate for the continuing constitutional injury visited upon Plaintiffs by Section 203-e's compelled speech requirement. The balance of harms clearly favors an injunction where Plaintiffs are compelled to speak in violation of their deepest convictions and the State "does not face harm from enforcing an unconstitutional statute." ECF No. 27 at 50. Finally, the public interest will be served by a permanent injunction. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("securing First Amendment rights is in the public interest"). This Court already found as much in its earlier preliminary injunction ruling, concluding that "enjoining enforcement of a statute that potentially violates citizens' constitutional rights is in the public interest." ECF No. 27 at 50. The violation of those constitutional rights is clear and the same logic supports a permanent injunction now.

## CONCLUSION

For all these reasons, Plaintiffs request that the Court grant them summary judgment on Section 203-e's employee handbook notice provision and permanently enjoin its operation.

Respectfully submitted this 21st day of May, 2021.

David A. Cortman
GA Bar No. 188810
dcortman@ADFlegal.org
Alliance Defending Freedom
1000 Hurricane Shoals Road, N.E.
Suite D-1100
Lawrenceville, GA  30043
(770) 339-0774
(770) 339-6744 (Fax)

<u>s/ Kenneth J. Connelly</u>
James P. Trainor, Bar No. 505767
Trainor Law PLLC
2452 US Route 9, Suite 203
Malta, NY 12020
(518) 899-9200
(518) 899-9300 (Fax)
jamest@trainor-lawfirm.com
Local Counsel

Kevin Theriot, AZ Bar No. 30446*
ktheriot@ADFlegal.org
Kenneth J. Connelly, AZ Bar No. 25420*
kconnelly@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (Fax)
*Admitted Pro Hac Vice

*Attorneys for Plaintiffs*

To:    VIA ECF
       Adrienne J. Kerwin
       Office of Attorney General-Albany
       State of New York
       The Capitol
       Albany, NY 12224
       Adrienne.Kerwin@ag.ny.gov