**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**COMPASSCARE, a New York nonprofit corporation,**
**NATIONAL INSTITUTE OF FAMILY AND LIFE**
**ADVOCATES, d/b/a NIFLA, a Virginia Corporation,**
**FIRST BIBLE BAPTIST CHURCH, a New York**
**nonprofit corporation,**

                              **Plaintiffs,**

        **v.**                                        **1:19-CV-1409**
                                                      **(TJM/DJS)**

**ANDREW M. CUOMO, in his official capacity**
**as the Governor of the State of New York;**
**ROBERTA REARDON, in her official capacity**
**as Commissioner of the Labor Department of**
**the State of New York, and LETITIA JAMES, in**
**her official capacity as Attorney General of the**
**State of New York,**

                              **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

**DECISION & ORDER**

        Before the Court are the parties' motions for summary judgment on the remaining

issue in this case involving a New York State law that purports to protect employees from

discrimination based on their "reproductive health choices."  See dkt. #s 43, 44.  Plaintiffs

are religious organizations opposed to abortion.  Two of the Plaintiffs directly provide

counseling and health information to pregnant women in an effort to convince them not to

have abortions and the third Plaintiff represents other entities that provide such services.

Plaintiffs sought injunctive relief against the New York statute, contending that the

1

legislation violated the First Amendment in a variety of ways.  Defendants moved to dismiss the Complaint for failure to state a claim.  The Court, in a decision issued June 5, 2020, dismissed most of Plaintiff's claims and denied injunctive relief.  The Court granted Plaintiffs injunctive relief on one claim, however, which involved a requirement that Plaintiffs provide notice about the law in question to employees.  The parties have since engaged in discovery on that single claim.  Each side now seeks summary judgment on that claim.  The parties have briefed the issues, and the Court will decide the matter without oral argument.

## I.    BACKGROUND

The Court has already issued an extensive decision on this matter.  The Court presumes the parties' familiarity with the underlying facts of this matter and will offer only a brief summary of the legislation at issue, concentrating instead on the particular provision that is the subject of the instant motions.

The statute in question, a portion of the New York Labor Law, is titled "Prohibition on discrimination based on an employee's or a dependent's reproductive health decision making."  N.Y Labor Law § 203-e.  That statute prohibits an employer from "accessing an employee's personal information regarding the employee's or the employee's dependent's reproductive health decision making[.]" N.Y. Labor Law § 203-e(1).  The prohibition on access also "includ[es] but is not limited to, the decision to use or access a particular drug, device, or medical service without the employee's prior informed affirmative written consent."  The statute also provides that:

2.  An employer shall not:

(a) discriminate nor take any retaliatory action against an employee with

2

respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive decision making, including, but not limited to, a decision to use or access a particular drug, device, or medial service; or

(b) require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive or health care decisions, including use of a particular drug, device, or medical service.

N.Y. Labor Law § 203-e(2).  The statute provides an employee the right to "bring a civil action . . . against an employer alleged to have violated the provisions of this section." N.Y. Labor Law § 203-e(3).  In such cases, a court may award damages, including back pay and attorneys fees and costs, injunctive relief, reinstatement, and liquidated damages. N.Y. Labor Law § 203-e(3)(a-d).  The statute also permits civil penalties against an employer who retaliates against an employee for exercising rights under the statute.  N.Y. Labor Law § 203-e(5).  Finally, "[a]n employer that provides an employee handbook to its employees must include in the handbook notice of employee rights and remedies under this action."  N.Y. Labor Law § 203-e(6).

The Court's decision of Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss resulted in an injunction against enforcement of Section 203-e(6).  Whether to make that injunction permanent is the subject of the motions presently before the Court.

**II.    Legal Standards**

**A.    Summary Judgment**

The parties have filed motions for summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.

1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### B.    Permanent Injunction

To obtain a permanent injunction a party "must demonstrate: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

4

that the public interest would not be disserved by a permanent injunction.'" Entergy

Nuclear Vt. Yankee, LLC v. Shumlin, 733 F.3d 393, 422 (2d Cir. 2013) (quoting Monsanto

Co. v. Geertson Seed Farms, 561 U.S. 139, 130 S.Ct. 2743, 2756, 177 L.Ed.2d 461

(2010)).  Such a party must "succeed on the merits and 'show the absence of an adequate

remedy at law and irreparable harm if the relief is not granted.'"  Roach v. Morse, 440 F.3d

53, 56 (2d Cir. 2006) (quoting N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339,

1362 (2d Cir. 1989)).  A "presumption of irreparable harm . . . flows from a violation of

constitutional rights."  Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996).

## III.   ANALYSIS

The claim here at issue concerns Section 203-e(6) of the statute, which provides

that  "[a]n employer that provides an employee handbook to its employees must include in

the handbook notice of employee rights and remedies under this action."  N.Y. Labor Law

§ 203-e(6).

Plaintiffs contend that this provision violates their First Amendment freedom of

speech because the provision compels them to convey a message with which they

disagree, and one which undermines their purpose as organizations opposed to abortion.

### A.   Compelled Speech

"The First Amendment . . . prohibits laws that abridge the freedom of speech."  Nat'l

Inst. of Family & Life Advocates v. Becerra, 138 S.Ct. 2361, 2371 (2018).  Courts

"distinguish between content-based and content-neutral regulations of speech."  Id.

"Content-based regulations 'target speech based on its communicative content.'"  Id.

(quoting Reed v. Town of Gilbert, 576 U.S. ____, ____, 135 S.Ct. 2218 (2015)).  Such

regulations "'are presumptively unconstitutional and may be justified only if the government proves they are narrowly tailored to serve compelling state interests.'" Id. (quoting Reed, 135 S.Ct. 2218).  When a state compels an individual "to speak a particular message," the state "alter[s] the content of [their] speech,'" and engages in content-based regulation.  Id. (quoting Riley v. National Federal of Blind of N.C., Inc., 487 U.S. 781, 795 (1988)).  A court is to "apply the most exacting scrutiny" to such restrictions on speech.  Turner Broad. Sys. v FCC, 512 U.S. 622, 642 (1994).[1]  Under such "strict scrutiny," a court considers "whether a law is narrowly drawn to serve a compelling governmental interest."  Evergreen Ass'n v. City of New York, 740 F.3d 233, 245 (2d Cir. 2014).  "The statute must use the least restrictive means to achieve its ends."  Id. (quoting United States v. Playboy Entm't Group, 529 U.S. 803, 813 (2000)).   The standard is a difficult one to meet, but "it is not true 'that strict scrutiny is strict in theory, but fatal in fact.'"  Id. (quoting Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 237 (1995)).  "The First Amendment is concerned with a *balancing* of interests."  Id. at 247 (emphasis in original).

## B.    Relevant Facts

Section 203-e provides that "[a]n employer that provides an employee handbook to its employees must include in the handbook notice of employee rights and remedies under this section."  NY Labor L. § 203-e(6).

---

[1]The Court notes that the strict scrutiny test is different in the context of a free-exercise claim.  In that setting, a court considering whether legislation advances a compelling state interest is to "[look] beyond broadly formulated interests justifying the general applicability of government mandates and [scrutinize] the asserted harm of granting specific exemptions to particular religious claimants."  Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 431 (2006).

Defendants contend that this provision represents only a requirement "to include merely factual information" in an "employee handbook about the existence of rights under § 203-e." Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment , dkt. # 43-8 ("Defendants' Statement"), at ¶ 1. Plaintiffs do not dispute that Section 203-e(6) requires a recitation of "factual information," but argue that such a characterization "is both incomplete and argumentative," as well as immaterial as to whether the provision is constitutionally sound. Plaintiffs' Response to Defendants' Statement of Material Facts ("Plaintiffs' Response"), dkt. # 50-1, at ¶ 1. The parties agree that the provision "does not dictate the format of the notice." Defendants' Statement at ¶ 2. They also agree that the provision "does not require employers to use any particular words in the notice." Id. at ¶ 3. The provision also does not require employers to take any position on the statute and the protections it provides. Id. at ¶ 4. No employer is required to provide an employee handbook. Id. at ¶ 5.

Defendants point out that employers are sometimes required to provide notice about "certain workplace rights" that employees enjoy. Id. at ¶ 6. Plaintiffs agree that such requirements exist, but dispute their legal significance. Plaintiffs' Response at ¶ 6. Employers are also sometimes required "to post recitations of certain employee rights in the workplace where they are visible to the public and visitors to the employer's business space." Defendants' Statement at ¶ 7. Plaintiffs term this statement a legal conclusion, and dispute that the existence of any such requirements is relevant to the issue before the Court. Plaintiffs' Response at ¶ 7. Section 203-e(6) does not require an employer to post anything in the workplace, nor do employers have to tell people who use their services or the public about Section 203-e. Defendants' Statement at ¶¶ 8-9. Defendants contend

that Plaintiffs' claim that the statute "permits the employer to limit the audience of the notice to ensure that no one accessing or evaluating the services of the employer can draw an opinion that the employer endorses any particular reproductive health care decisions" is both immaterial and a statement of opinion that requires no response. Defendants' Response at ¶ 10; Plaintiffs' Statement at ¶ 10.  The parties dispute whether the notice requirement serves as a way to keep the statement of rights provided to employees "inconspicuous" and out of public eyes.  <u>Compare</u> Defendants' Statement at ¶11 and Plaintiffs' Response at ¶ 11.  Plaintiffs contend that the requirement that such a statement be included in their employee manual amounts to interference with their training methods and interactions with employees.  Plaintiffs' Response at ¶ 11.

The parties agree that employee handbooks often contain recitations of employee rights.  <u>Compare</u> Defendants' Statement at ¶ 12 and Plaintiffs' Response at ¶ 12. Defendants claim that a "reasonable" employee could look to a handbook for "guidance." Defendants' Statement at ¶ 14.  Plaintiffs respond that Defendants merely speculate on this issue, and that many other sources exist for an employee to understand workplace rights.  Plaintiffs' Response at ¶ 14.  Defendants further contend that, without a handbook, an employee must look to other sources for rights.  Defendants' Statement at ¶ 15. Plaintiffs contend that this statement is merely speculative and immaterial to the issues at hand.  Plaintiffs' Response at ¶ 15.  Defendants claim that "[a]n employer who chooses to advise employees of certain rights must include notice of employee rights under § 203-e." Defendants' Statement at ¶ 16.  Plaintiffs contend that the notice requirement applies whenever an employer produces a handbook, even if the handbook provides no notice of rights outside of Section 203-e.  Plaintiffs Response at ¶ 16.  In any case, the parties

agree that Plaintiffs' handbooks and policies contain "recitations of . . . anti-discrimination and anti-retaliation rights" outside the ones here at issue. <u>Compare</u> Defendants' Statement ¶ 18 and Plaintiffs' Response at ¶ 18. They also agree that the documents contain statements about Plaintiffs' beliefs, positions on abortion and birth control, and other issues. Defendants' Statement at ¶¶ 19, 21.

Defendants contend that failing to include the rights under Section 203-e in a handbook that contains recitations of other rights would be misleading and suggest that no such right exists. Defendants' Statement at ¶ 17. Plaintiffs contend that such a claim is merely speculation. Plaintiffs' Response at ¶ 17. Plaintiffs also contend that the statements in their handbooks that describe rights under various anti-discrimination laws also include the statement that "such practices operate insofar as governmental expectations do not compel CompassCare to violate or compromise its values, purpose, or religious beliefs informing that purpose." <u>Id.</u> A model employee handbook used by the Plaintiffs also suggests using language that states that such employers "have the right to 'hire only candidates who agree with the [organization's] Statement of Faith, profess Jesus Christ as their Lord and Savior, uphold a solid prolife position on abortion and live a lifestyle consistent with biblical values." <u>Id.</u> As such, Plaintiffs claim, their "employees are explicitly informed that all employment decisions are subject to fealty to their core religious beliefs and missions, thereby eliminating any danger they will be misled." <u>Id.</u>

Plaintiff CompassCare relates that, as a "religious, non-profit pregnancy center" that "provides pregnancy-related medical and non-medical services to its patients without charge," the organization is motivated by a "religious belief that all human life is a gift from God and is equally value and deserving of protection, from fertilization to natural death."

9

Plaintiffs' Statement of Material Facts in Support of Summary Judgment ("Plaintiffs' Statement"), dkt. # 44-6, at ¶¶ 1-2.  These religious beliefs "require" CompassCare "to oppose, and not facilitate or provide, abortion and abortifacient drugs."  Id. at ¶ 3.  "CompassCare exists to make abortion and abortifacient drugs unnecessary by empowering pregnant women with information and assistance to bring their child to term."  Id. at ¶ 4.  The organization achieves this mission by "hir[ing] only those individuals who willingly agree to, and personally live by, its religious beliefs and consent to its positional statements on abortion and birth control."  Id. at ¶ 5.  Allowing "employees to act contrary to the pro-life mission and purpose of the organization" would "compromise" that mission, CompassCare believes.  Id. at ¶ 6.  CompassCare maintains an employee handbook and requires its employees to assent to its pro-life beliefs" stated in the handbook "to work at the facility."  Id. at ¶ 8.

Plaintiff National Institute of Family and Life Advocates, a "religious, pro-life non-profit organization comprised of member pregnancy care centers from across the nation, including 41 members centers in New York," represents organizations with purposes and approaches to care and advocacy similar to those of CompassCare.  Id. at ¶¶ 9-12.  NIFLA purports to "[emphasize] to all its centers the importance of statements of faith and codes of conduct[.]"  Id. at ¶ 13.  NIFLA requires such centers to agree never to "offer, recommend or refer for abortions or abortifacients."  Id.  Like CompassCare, NIFLA centers will only hire those who "agree with, personally adhere to, and effectively convey organizational beliefs about reproductive health decisions, including, but not limited to, decisions related to abortion, contraceptive use, and sexual morality."  Id. at ¶ 14.  NIFLA provides centers with a template for employee handbooks.  Id. at ¶ 15.  That template

"describes NIFLA's religious beliefs" about "the sanctity of human life and the humanity of the unborn[.]"  Id.  NIFLA encourages member centers "to adapt the template to" their "own circumstances."  Id.  "Many" NIFLA member centers in New York have handbooks; "they use them to ensure that their respective pro-life missions and religious beliefs are faithfully followed and properly implemented."  Id. at ¶ 16.

Plaintiff First Bible Baptist Church is a Christian Church in Hilton, New York, that shares the views on abortion, contraception, and sexual morality expressed by the other Plaintiffs.  Id. at ¶¶ 17-19.  Like the other Plaintiffs First Baptist "hires as employees and accepts as volunteers only those who abide by its religious beliefs regarding abortion, human sexuality, and related matters" described in the Church's "Statement of Faith and . . . outlined in its Constitution."  Id. at ¶ 20.  First Bible does not currently have an employee handbook.  Id. at ¶ 21.  The Church is working on one, "and expects all its employees and volunteers to agree to abide by its missions and beliefs in their work at First Bible and in their personal lives."  Id.[2]

The parties agree that the State of New York made no attempts "to communicate the statute's protections to employees by . . . alternative means before . . . compell[ing] employers to do so through the employee handbook notice provision."  Id. at ¶ 36.  The legislation requires notice only when an employer maintains an employee handbook.  Id. at ¶ 37.  Plaintiffs claim they use their employee handbooks "to ensure that their

_____

[2]Plaintiffs' Statement of Material Facts contains a description of Section 203-e, the enforcement mechanisms therein, and information about the process that led to the passage fo this statute.  See Plaintiffs' Statement at ¶¶ 22-36.  The Court addressed this information in its previous decision and assumes the parties' familiarity.  The Court will not address those issues here.

employees work and live consistent with the organizations' religious, pro-life beliefs so that they can fulfill the organizations' respective missions." Id. at ¶ 38. Defendants contend that the employee handbooks are used for other purposes as well. Defendants' Response to Plaintiffs' Statement of Material Facts ("Defendants' Response"), dkt. # 49-1, at ¶ 38. CompassCare, for instance, "requires its employees to sign off on and assent to working and living the principles and beliefs contained in its employee handbook, which contain[s] positional statements on abortion, birth control, and the Christian faith." Id. at ¶ 39. Defendants again point out that the handbook also contains other information. Defendants' Response at ¶ 39.

Plaintiffs contend that Section 203-e "interferes with Plaintiffs' ability to operate their organizations consistent with their religious, pro-life mission and purpose because it compels them to speak what they would not." Plaintiffs' Statement at ¶ 40. The requirement that they provide notice of the law's provision "forces Plaintiffs to communicate to their employees the opposite of what Plaintiffs believe–that their employees' reproductive decisions are unimportant to accomplishing the organization's mission." Id. Defendants respond that the notice provision does not require an employer to take any position on the provisions of Section 203-e. Defendants' Response at ¶ 40. Plaintiffs further contend that the statute harms them by threatening them with civil and criminal penalties "for abiding by their organizational codes of conduct and statements of faith." Plaintiffs' Statement at ¶ 41. Defendants respond that penalties come from violating the statute's provisions, not from having a particular religious point of view. Defendants' Response at ¶ 41.

Defendants provide a declaration from Maura McCann, who serves as the Director

12

of Labor Standards for the New York State Department of Labor.  See dkt # 43-7.

McCann relates that the Division of Labor Standards "is responsible for enforcing

employer requirements to provide notices to employees of their rights in the workplace nad

remedies for employer violations."  Id. at ¶ 4.  New York law, McCann explains, "requires"

that the Commissioner of Labor "publish, on an annual basis, a list of all regulations and

notices required to be posted by employers for the benefit of their employees pursuant to

the labor law, the workers' compensation law, and any other state or federal law, rule or

regulation."  Id. at ¶ 6.  The Division of Labor Standards enforces Labor Law § 203-e,

including the requirement here in question that mandates that "an employer that provides

an employee handbook to its employees . . . include a notice of employee rights and

remedies under § 203-e in its handbook."  Id. at § 7.  McCann insists that "Section 203-

e(6) requires an employer to include merely factual information in its employee handbook

about the existence of rights under § 203-e."  Id. at ¶ 10.  Section 203-e(6) does not, she

claims, "require an employer to use any particular words or take any position on the

protections" in the law in question.  Id.

McCann further contends that "[r]equiring employers to inform employees of certain

workplace rights is not unique to ¶ 203-e."  Id. at ¶ 11.  She points to several other labor

law provisions.  Id. at ¶ 12.  Labor Law § 201, for instance, directs the Commissioner of

Labor to provide employers with "copies or abstracts" of parts of the labor law that affect

employees to have them "posted by the employer in a conspicuous place on each floor of

the premises."  Id. at ¶ 12(a).  Labor Law § 861-d(1) requires contractors "to post in a

prominent and accessible place on the site where construction is performed, a legible

statement, provided by the commissioner," describing the requirements that independent

13

contractors pay taxes, the rights of employees to workers' compensation, unemployment, minimum wage, overtime, and safety protections under state and federal law. Id. at ¶ 12(b). The postings must also provide contact information for help in filing complaints or obtaining other information. Id. Employers must also "disclose policies to prevent sexual harassment" under Labor Law § 201-g. Id. at ¶ 12(f). Other notices must be posted describing information on pay practices, toxic substances in the workplace, rights during a physical exam, rights under the Human Rights Law, information from OSHA, and information on the Fair Labor Standards Act and the Family and Medical Leave Act. Id. at ¶¶ 12(g-m). Employers have to provide such notice "even when DOL advertises the same rights and remedies" on-line or in other public communications." Id. at ¶ 13. "These notices provide merely factual information to employees about their legal rights and remedies in the workplace." Id. Those posting requirements exists serve "to support worker protection by making employees aware of their rights and remedies," and many such posting requirements exist even when employers must include such information in handbooks. Id. at ¶ 14.

McCann points out that many of these other statutes require a posting of rights in places where the public can see them. Id. at ¶ 15. The same does not apply to Section 203-e, she points out, since the information need only be shared in an employee handbook, "which is a non-public document that is accessible only to employees and referred to only intermittently as desired by the employee." Id. at ¶ 16. This requirement, McCann claims, permits "employers an avenue . . . to inform employees of their rights under the statute in a private, inconspicuous way." Id. at ¶ 17. This requirement "permits the employer to limit the audience of the notice to ensure that no one accessing or

14

evaluating the services of the employer can draw an opinion that the employer endorses any particular reproductive health care decision." Id. ¶ 18.

Employers do not even have to inform employees of their rights under the statute if they do not print a handbook. Id. at ¶ 19.   According to McCann, employers frequently provide employees with notice of their rights in a handbook; the statute in question requires that when they do so they include a notice of rights under this statute. Id. at ¶ 20. Providing such information in a handbook is not unusual, and "corresponds with general handbook notices explaining matters such as employee health benefits, privacy and confidentiality of protected health information ("PHI") under the federal Health Insurance and Portability Act of 1996 ("HIPAA"), anti-discrimination polices, health and safety practices, and employer codes of conduct in the workplace more broadly." Id. at ¶ 21. McCann assumes that employees will look to a handbook to understand the rights they have. Id. at ¶¶ 22-25.  Section 203-e thus "ensures that, if an employer issues an employee handbook, it contains an employee's rights under the statute." Id. at ¶ 26.  A handbook that explains an employee's rights under various statutes that does not include rights under Section 203-e "would suggest that no such rights exist, thereby misleading employees." Id.

McCann states that the State sometimes decides "to publicly advertise and publicize rights that protect employees in an effort to ensure that employees are aware of the existence of such rights, and remedies that they may pursue if those rights are violated." Id. at ¶ 27.  The New York legislature did not mandate such publicity, though "it has for other laws." Id.  McCann claims that a number of "[c]onsiderations" go into deciding whether to provide "advertising and publicity" about a particular right. Id. at ¶ 28.

15

They include: "whether the Legislature mandated the DOL campaign; (2) if the subject affects vulnerable or isolated populations; (3) if there are requests by advocates; (4) the complexity of the law; (5) whether it is a new matter regulated by DOL; and (6) DOL resources." Id.

McCann explains that the Department of Labor did not undertake an "advertising or publicity campaign" surrounding Section 203-e "because (1) DOL resources have been dedicated to COVID-19 worker protection priorities; (2) DOL is in the process of updating the format of its entire website; and (3) DOL would have to evaluate the scope of any campaign based on the factors listed above." Id. at ¶ 29.

### C.    Type of Speech

The parties first disagree about what type of regulation of speech Section 203-e(6) presents, and thus what level of scrutiny the Court must use to evaluate that provision. At the preliminary injunction stage, the Court determined that the provision required the Plaintiffs to put forth a particular message and was thus subject to strict scrutiny. The parties revisit that issue here.

Plaintiffs contend that the notice provision of Section 203-e(6) is compelled speech. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." Wooley v. Maryland, 430 U.S. 705, 714 (1977). "[T]he First Amendment protects the 'right to decide what to say and what not to say.'" Burns v. Martuscello, 890 F.3d 77, 84 (2d Cir. 2018) (quoting Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011)). Plaintiffs contend that the notice provision compels them to use language that they would not use, and that this constitutes compelled speech. Such compelled speech, they complain, intrudes on

16

their "freedom of mind," "dilutes and comprises" their "ability to speak their own" message regarding abortion, birth control, and sexual morality, and undermines their "pro-life mission."[3]   Plaintiffs insist that the notice requirement "is exactly the opposite of what Plaintiffs want and need to communicate to their employees."

The statute does not dictate particular language or a particular form for the notice. Presumably, the rights about which the employer would have to notify an employee would be the prohibition on an employer's accessing information about an employee's or an employee's dependent's "reproductive health decisionmaking," the statute's prohibition on discrimination or retaliation because of such decision making, and the statute's protection against an employer-mandated waiver of the employee's right to make their own reproductive health-care decisions.  See NY Labor L. §§ 203-e(1)-(2).  Such notice might also include the situations in which an employee could raise a retaliation claim.  NY Labor L. § 203-e(5)(a-c).  The employer would also be required to report the remedies available in the statute, including the employee's right to bring a civil action against "an employer alleged to have violated the provisions" of the statute.  N.Y. Labor L. § 203-e(3).  In filing

---

[3]Plaintiffs' argument here appears to go beyond the notice requirement here at issue and aim at Section 203-e in general.  Plaintiffs' argument that "Plaintiffs' work in the community is carried out by their people, and it is essential that they be able to hire to that unique mission.  That also requires, however, that they be able to not hire–or be able to discipline--those employees who would compromise their work."  Plaintiffs go on to explain how the notice requirement forces them to speak a message that contradicts their message by requiring to inform "employees that their reproductive health choices do not matter to Plaintiffs' work."  The first part of this argument, however, does not really address the notice requirement, but instead the underlying purpose of Section 203-e, which is to limit employers' ability to make hiring and firing decisions based on "reproductive health-care choices."  The Court understands that Plaintiffs do not like these limits on hiring and discipline, but the Court has already concluded that those limitations do not violate the Constitution under current standards.  The Court will wait with the parties to see the results of their appeal.

such a lawsuit, an employee could obtain damages, including back pay, benefits, and attorneys fees and costs.  N.Y. Labor L. § 203-e(3)(a).  The employee could also obtain injunctive relief, reinstatement, and liquidated damages.  N.Y. Labor L. § 203-e(3)(b-d).

Plaintiffs contend that their reason for being is to oppose abortion, contraception, and ideas of sexual morality that are contrary to their understanding of Christianity and the Holy Bible.  They also share their faith in Jesus Christ.  They assert that the speech they would be compelled to give here is contrary to those understandings.  They contend that under Section 203-e they are required "to tell employees that they can obtain abortions without employment consequences[.]"  Including such statements, they claim, will force them to "[tell] employees they can view abortion and other objectionable activities as permissible alternatives."  Plaintiffs state that they would not make such statements to their employees without the statutory mandate.

Defendants argue that no compelled speech exists here because the only requirement in place is that Plaintiffs provide factual information about employees rights under the law.  They note that the notice requirement applies to all employers, not just religious employers.  The requirement, Defendants insist, is therefore not based on the content of the employer's speech.  The notice required does not direct the Plaintiffs to offer any message about the acceptability of abortion or contraception, and certainly does not encourage the use of either.  The notice provision also does not require employers to stop speaking their message in opposition to abortion, contraception, or sex outside marriage.  Instead, the notice requirement merely requires employers to provide accurate and factual information about the existence of a law.

18

The Court addressed this issue in its earlier decision, finding that:

The Supreme Court recently addressed a similar requirement to provide notice In National Institute of Family & Life Advocates, 138 S.Ct. 2361.  There, the Court considered the level of scrutiny required when the State of California mandated that certain licensed medical facilities that provided "'family planning or pregnancy-related services'" read a notice to patients that explained that "'California has public programs that provide immediate free or low-cost access to comprehensive family planning services (including all FDA-approved methods of contraception), prenatal care, and abortion for eligible women." Nat'l Inst., 138 S.Ct. at 2369 (quoting Cal. Health & Safety Code Ann. §§ 123471(a), 123472(a)(1)).  The Court concluded that this notice requirement amounted to "a content-based regulation of speech" because it "compell[ed] individuals to speak a particular message" and thus "'altered the content of [their] speech.'" Id. at 2371 (quoting Riley v. National Federal of Blind of N.C., Inc., 487 U.S. 781, 795 (1988)).  The notice altered the Plaintiffs' speech because it "requir[ed] petitioners to inform women how they can obtain state-subsidized abortions . . . at the same time petitioners tr[ied] to dissuade women from choosing that option[.]" Id.  The court below had applied a lower level of scrutiny because the communications between clinics and doctors amounted to "professional speech." Id.  The Supreme Court examined the issue and concluded that "neither California nor the Ninth Circuit has identified a persuasive reason for treating professional speech as a unique category that is exempt from ordinary First Amendment principles." Id. at 2375.  Rather than deciding whether there were situations where professional speech mandated a different level of scrutiny, the Court found the regulation invalid because the requirement could not "survive even intermediate scrutiny." Id.

The Court finds the situation here analogous.  The notice directed by the statute is language that the Plaintiffs would otherwise not use, and they contend that the prohibitions on discrimination because of "reproductive decision making" undermines their message that the only choices that persons should make on such matters are to carry a child to term, not use birth control, and conduct their sexual lives according to the standards Plaintiffs claim the Bible sets out.  While the language in Section 203-e's notice section does not mention abortion by name, does not suggest to anyone that abortion providers are available, and does not direct anyone to use birth control, the Court finds that the statute compels Defendants to use language they otherwise would not.  The notice provision, therefore, is subject to strict scrutiny.  No issue of professional speech applies here, which could raise an issue concerning some other level of scrutiny.

Dkt. # 27, at 45-47.

The time since the Court reached that conclusion, and the additional evidence and

19

argument that the Defendants provide, has not altered that view.  The Court finds that

Plaintiffs' handbooks, described above, represent Plaintiffs' statements to their employees

about the rules that govern conduct in the workplace, the values of the organizations, and

the religious perspective that guides the organizations' operations.  Requiring that

Plaintiffs also include in those handbooks a statement that the law protects employees

who engage in behavior contrary to that promoted by the Plaintiffs would compel them to

promote a message about conduct contrary to their religious perspective.  The Court finds

that compelling Plaintiffs to provide that message forces them to speak in ways contrary to

their values. Moreover, having been provided the handbooks that Plaintiffs have created,

the Court is convinced that any statement about women's right to autonomy about

reproductive health decision-making is contrary to the message that Plaintiffs wish to

promote about biblical values and sexuality.  Such a situation requires strict scrutiny.[4]

---

[4]The Court is not persuaded, however, by Plaintiffs' argument that the situation here is analogous to that in New Hope Family Servs. v. Poole, 966 F.3d 145 (2d Cir. 2020). There, a Christian adoption agency opposed to adoptions by same sex couples alleged that the State of New York violated the First Amendment by "compelling it to say something it does not believe, *i.e.*, that adoption by unmarried or same-sex couples can be in the best interests of the child." Id. at 170.  New York, the agency claimed, compelled speech by forcing the agency to say something that it did not believe, "that adoption by unmarried or same-sex couples would ever be in the best interests of a child." Id. at 171. The Court found that the agency had stated a claim partly on this basis, since the agency could not both speak its religious message and continue to offer services as an adoption agency under New York regulations.  Plaintiff's claim here–that "Section 203-e's notice provision jeopardizes" Plaintiff's religious message "by imposing its own type of ultimatum–either dilute your pro-life witness by hiring and retaining active dissenters, or subject yourselves to potentially crippling private lawsuits, state enforcement actions, exorbitant damages awards, and criminal penalities" is an argument against the statute itself and not specifically against the notice provision.  Plaintiffs could theorteically comply with the notice provision and continue to speak out against abortion and contraception. New Hope alleged that they could not continue to facilitate adoptions and comply with a regulation that required them to state that adoption by an unmarried or same-sex couple was in the best interest of the child.

### D.     Application of Strict Scrutiny

In the Court's earlier decision, the Court concluded that, while the rights that the

State sought to protect in Section 203-e were compelling state interests, since the right to

privacy implicated in reproductive health care decisions are constitutional rights, as are the

First Amendment rights raised by the Plaintiff.  The Court relies on those findings here.

The Court also found that the Plaintiffs had sufficiently alleged that the regulations were

not narrowly tailored to achieve that compelling state interest and enjoined enforcement of

that portion of the statute.  The question now is whether Plaintiffs have evidence sufficient

to support summary judgment on their claims that the notice provision is not narrowly

tailored to achieve the State's compelling interest.[5]

"Under strict scrutiny, the challenged regulation 'must be narrowly tailored to

promote a compelling Government interest.'" Evergreen Ass'n v. City of New York, 740

F.3d 233, 246 (2d Cir. 2014) (quoting United States v. Playboy Entm't Group, 529 U.S.

803, 813 (2000)).  "The statute must use the least restrictive means to achieve its ends."

Id.  This standard "is exceptionally demanding."  Burwell v. Hobby Lobby Stores, Inc., 573

U.S. 682, 728 (2014).  "If a less restrictive alternative would serve the Government's

purpose, the legislature must use that alternative."  Playboy Entm't Group, 529 U.S. at

_____

[5]Plaintiffs spend much of their briefing on this issue arguing that Defendants had no compelling interest in the regulation, in large part because, Defendants claim, the State could not point to any instances of discrimination on the basis of reproductive health decisionmaking before the passed the statute.  The Court has already addressed that issue and relies on that discussion here.  The Court notes that Defendants point out that Plaintiffs' opposition to Section 203-e could be read as a desire to make employment decision based on employees' reproductive health decisions.  In any case, the Court notes that Section 203-e could be read to protect women who make reproductive health decisions of which the Plaintiffs approve, as well as ones which they oppose.

813.  The state bears the burden of showing that the regulation in question is "narrowly

tailored" to meet a compelling interest.  <u>Green Party of Conn. v. Garfield</u>, 616 F.3d 189,

210 (2d Cir. 2010).

Defendants contend that, since the notice provision does not prevent the Plaintiffs

from promoting their anti-abortion message, the regulation does not restrict their speech

and no more analysis is necessary.  In any case, the regulation stands because

employers can avoid the speech by not producing an employee handbook.  Employers

also do not have to make any pronouncements publicly about Section 203-e, since an

employee handbook is not shared with the public.

Defendants point to McCann's declaration to argue that the notice provision is the

least restrictive way to achieve the State's interest in informing employees of their rights.

They argue that "the notice provision does not require employers to publicly post anything

about § 203-e, thereby necessarily limiting access to the notice only to employees."  No

one besides an employee "sees or learns of information that relates to employee

reproductive rights."  Those limiting provisions ensure that no one outside the workplace

can form an opinion that employers endorse the rights enshrined in Section 203-e.  Those

who seek services at Plaintiffs' centers will not be aware of these rights because they will

not be posted publicly.  They also argue that the notice requirement does not force an

employer to take a position on the suitability of Section 203-e; the notice provision permits

an employer to offer an opinion on abortion and contraception alongside that notice.

Defendants also argue that the notice provision is not restrictive because an employer can

avoid providing the notice altogether by deciding not to offer an employee handbook.

Defendants argue that notice is necessary for employers that have handbooks because

22

employees would otherwise be misled about their rights.

Defendants' arguments and the evidence offered by McCann do not explain how the requirement that Plaintiffs include information about the protections to workers' rights offered in Section 203-e represents the least restrictive means available of providing workers with this information.  McCann's evidence indicates that the Defendants have offered workers this information in a variety of other ways, including by advertising the provision generally, producing posters to be placed in workers' view at the job site, and in general statements of workers' rights provided by the Department itself.  Doing so would not require the Plaintiffs to produce such speech themselves, or to include that speech in handbooks describing workers' rights and responsibilities produced under the employers' imprimatur.  Further, while the Defendants are certainly correct that Plaintiffs can avoid the requirement that they provide notice by eschewing an employee handbook, the Court is unpersuaded that the Defendants can achieve their compelling purpose of informing workers of their rights under the statute by this method.  If the only means that the Defendants offer for informing persons of the Section 203-e rights is through a statement in an employee handbook that need not be provided by an employer, Defendants have no way of ensuring that employees understand those rights.

For those reasons, the Court concludes that Defendants have not demonstrated that the notice requirement is the least restrictive means of achieving their compelling state interest.  The Court therefore finds that Plaintiffs' must prevail on their First Amendment claim with respect to the notice provision.  The Court relies on its earlier conclusions that Plaintiffs will suffer irreparable harm from the provision, that they lack an adequate remedy at law, that the equities balance in their favors, and the public interest

23

would be served by an injunction.  <u>Engtergy</u>, 733 F.3d at 422.  The Court will therefore grant a permanent injunction in this respect.

## IV.   CONCLUSION

For the reasons stated above, the Plaintiffs motion for summary judgment, dkt. # 44, is hereby GRANTED.  The Defendants' motion for summary judgment, dkt. # 43, is hereby DENIED.  The Defendants are PERMANENTLY ENJOINED from enforcing the "notice" provision in New York Labor Law § 203-e(6) against any employer.

**IT IS SO ORDERED.**

**DATED: March 29, 2022**

Thomas J. McAvoy
Senior, U.S. District Judge